790 P.2d 1017

**COUNTY OF LOS ALAMOS,
Petitioner,**

v.

**Joe D. TAPIA, Respondent.**

**No. 18304.**

Supreme Court of New Mexico.

April 12, 1990.

Byron L. Treaster, Los Alamos, for petitioner.

Griffith, Boone & Cruse, P. Reid Griffith, Jr., Los Alamos, for respondent.

## OPINION

MONTGOMERY, Justice.

In the trial of a criminal case, after jeopardy attaches,[1] one of three outcomes is possible: The trial may be completed and the defendant acquitted; the trial may be completed and the defendant convicted; or the trial may not be completed at all, in which case it will have been aborted by some ruling of the trial court. In the first situation, it has been settled for almost a century that the Double Jeopardy Clause of the United States Constitution[2] precludes further prosecution of the defendant. *United States v. Ball*, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 (1896). *Ball* also firmly established that, in the second situation, reprosecution of the defendant is not barred if his or her conviction is set aside on appeal. *Id.* at 671–72, 16 S.Ct. at 1195–96.[3] The third situation has presented great difficulty for the courts; sometimes, depending on the reasons for the trial court's aborting the trial, double jeopardy will preclude a retrial; sometimes it will not.[4]

This case is one of those falling into the third category. The defendant's trial was aborted during the testimony of the county's first witness when the trial court ruled that his arrest had been illegal and that all evidence in support of the charge had to be suppressed. The court dismissed the charge and the state appealed to the court of appeals. The court of appeals dismissed the appeal, holding that the Double Jeopardy Clause barred further prosecution.[5] We granted certiorari and now reverse the court of appeals, remanding to the district court for trial.

### I.

In the early morning hours of January 27, 1987, a police officer in Los Alamos

1. Jeopardy attaches in a jury trial when the jury is empaneled and sworn; it attaches in a bench trial when the court begins to hear evidence. *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975); *State v. James*, 93 N.M. 605, 606, 603 P.2d 715, 716 (1979).

2. U.S. Const. amend. V ("... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * * "). The corresponding provision in the New Mexico Constitution is N.M. Const. art. II, § 15. The Double Jeopardy Clause applies to the states through the fourteenth amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). We have held that the New Mexico provision should be interpreted in the same way as the federal clause. *State v. Rogers*, 90 N.M. 604, 566 P.2d 1142 (1977).

3. However, if the defendant's appeal is successful because the prosecution's evidence was insufficient to convict, double jeopardy prevents a retrial. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

4. *See United States v. Scott*, 437 U.S. 82, 92–95, 98 S.Ct. 2187, 2194–96, 57 L.Ed.2d 65 (1978).

5. When further prosecution is barred by double jeopardy, an appeal by the state, which if successful would lead to reprosecution, will be dismissed. *See e.g., Smalis v. Pennsylvania*, 476 U.S. 140, 145, 106 S.Ct. 1745, 1749, 90 L.Ed.2d 116 (1986); *United States v. Jorn*, 400 U.S. 470, 476, 91 S.Ct. 547, 552, 27 L.Ed.2d 543 (1971). *See also United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (judgment of acquittal may not be appealed); *State v. Mares*, 92 N.M. 687, 594 P.2d 347 (Ct.App.1979) (court of appeals cannot review acquittal); NMSA 1978, § 39–3–3(C) (no appeal shall be taken by state where Double Jeopardy Clause prohibits further prosecution). *Cf. Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975) (government appeal from pre-trial order not barred since jeopardy had not attached); *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975) (government appeal from postverdict ruling not barred; double jeopardy not implicated where no danger of subjecting defendant to second trial).

observed defendant, at a point near the Los Alamos–Santa Fe County line, running a stop sign and driving with an inoperative tail light. The officer pursued defendant with emergency lights flashing, and defendant drove across the county line a short distance into Santa Fe County. There he stopped; and the officer, after observing his behavior, administered a field sobriety test and placed him under arrest. Defendant was cited for driving while intoxicated and later tried in Los Alamos Municipal Court, where he was convicted. He then appealed to the district court in a trial *de novo*.

At trial, the county first called the arresting officer. His testimony was interrupted by a defense motion to suppress all evidence resulting from the arrest on the ground that the arrest was illegal under the Fresh Pursuit Act, NMSA 1978, Sections 31–2–1 to –8 (Repl.Pamp.1984). Defense counsel questioned the officer on voir dire, establishing the fact that the arrest occurred in Santa Fe County. The evidence in support of the DWI charge consisted of the officer's observations, the field sobriety test, and a breath test. Defense counsel submitted a trial brief seeking suppression of the evidence and dismissal of the charge of driving while intoxicated. The trial judge heard oral argument, following which he granted the motion to suppress and to dismiss and later entered a written decision containing these rulings:

6. Defendant's arrest by Officer Davis and all fruits of that arrest, inlcuding [sic] statements made by the defendant, testimony concerning observations of the defendant made by the officer, testimony concerning field sobriety tests administered to Defendant by the officer and testimony or documentary evidence concerning the results of any chemical or breath tests are inadmissible as fruits of the illegal arrest, and should be suppressed.

7. The charge of driving while intoxicated and the charge of running a stop sign should be dismissed because the arrest of Defendant was illegal and all evidence in support thereof has been suppressed.

The county appealed to the court of appeals. While the appeal was pending, the court of appeals decided another case involving similar facts, ruling that the Fresh Pursuit Act did not authorize an officer deputized in one county to pursue a suspect into another county and arrest him there for DWI. On certiorari, we reversed this ruling and held that an arrest under these circumstances is valid under the Fresh Pursuit Act. *Incorporated County of Los Alamos v. Johnson,* 108 N.M. 633, 776 P.2d 1252 (1989). In that case the defendant had been convicted by the trial court, so the result of this Court's review was simply to reinstate the conviction. 108 N.M. at 635, 776 P.2d at 1254. In the present case, however, the defendant's trial had not been concluded; accordingly, the county on appeal sought to have the district court's dismissal of the charge reversed and to have the case remanded for trial.

Tapia moved to dismiss the appeal on double jeopardy grounds. The court of appeals granted the motion holding, in a two-to-one decision, that the constitutional prohibition against double jeopardy barred further proceedings. The court reasoned, relying on *Smalis v. Pennsylvania,* 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986), and *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), that the district court's dismissal constituted an "acquittal." In his opinion for the court, Judge Hartz said:

The district court's ruling was as much a determination of the facts in this case as is a directed verdict in a civil case resulting from the failure of a plaintiff to offer any admissible evidence on an element of the cause of action * * *. The prosecution had no admissible evidence to convict defendant; so it failed to satisfy its burden of proof. An acquittal is nothing more than a determination that the prosecutor has failed to meet the burden of proof.

Dissenting, Chief Judge Bivins took the view, in reliance on *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), and *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 97 S.Ct. 1349, 51

L.Ed.2d 642 (1977), that the trial court's dismissal was not an acquittal because it was not an adjudication of defendant's factual guilt or innocence; it was instead a ruling on a question of law and one that, moreover, the defendant himself had procured through his motion to abort the trial.

We granted certiorari to resolve these conflicting views and to provide our own input into the confusing welter of cases that suffuse this area of double-jeopardy jurisprudence.[6]

## II

■ We think that Judge Bivins had the better of the analysis. Despite the court of appeals' statement, the district court's ruling was *not* a determination of the facts in the case and, while it may have had the same effect insofar as the defendant was concerned, it was quite unlike a directed verdict in which the plaintiff or the state fails to offer sufficient evidence to satisfy its burden of proof. The trial court's ruling was in no sense a decision on the quantum of proof offered by the county, on its probative value, on the credibility of the evidence, or on any other question relating to the sufficiency of the county's case; it was purely and simply a ruling on the legality of defendant's arrest and the consequent admissibility *vel non* of the prosecution's evidence. The charge of DWI was dismissed, not because of an insufficiency of evidence to prove that defendant·was guilty beyond a reasonable doubt, but because "the arrest of Defendant was illegal and all evidence in support thereof ha[d] been suppressed." Thus, the court of appeals was simply wrong when it said, later in its opinion, that "the basis of the dismissal was factual innocence;" the basis of the dismissal was that all evidence in support of the charge had been suppressed (albeit, as we now know, incorrectly). For this reason, the decision in *Smalis v. Pennsyl-*

*vania*—that a defendant who demurs to the evidence as "insufficient to establish his factual guilt" has been acquitted, 476 U.S. at 144, 106 S.Ct. at 1744—is inapposite to this case.

In this area of the law, as in many others, characterizations and labels abound. What was the trial court's "dismissal," really? Was it really an "acquittal"—in which case the interdictions of *Smalis* and *Sanabria* absolutely prohibit retrial (and hence mandate dismissal of the appeal)—or was it, really, the "functional equivalent"[7] of a mistrial requested by the defense, in which "the Double Jeopardy Clause is not offended by a second prosecution." *United States v. Scott*, 437 U.S. at 93, 98 S.Ct. at 2195 (citing *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971)). Or was it, really, not the equivalent of a mistrial but a "termination" of the trial in defendant's favor before any determination of factual guilt or innocence, like the dismissal for preindictment delay in *Scott*, 437 U.S. at 94–95, 98 S.Ct. at 2195–96?

In *Scott*, the midtrial dismissal for preindictment delay was held not to bar further prosecution, and the distinction referred to above between an acquittal for insufficient evidence and a termination of the trial on a basis unrelated to factual guilt or innocence was firmly recognized.

> We think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant.

*Scott*, 437 U.S. at 98–99, 98 S.Ct. at 2198. The Court relied on the definition of "ac-

---

**6.** *See Burks v. United States*, 437 U.S. at 9, 98 S.Ct. at 2146: "The Court's holdings in this area * * * can hardly be characterized as models of consistency and clarity." *See also United States v. DiFrancesco*, 449 U.S. 117, 127, 101 S.Ct. 426, 432, 66 L.Ed.2d 328 (1980): "That its [i.e., the Double Jeopardy Clause] application has not

proved to be facile or routine is demonstrated by acknowledged changes in direction or in emphasis."

**7.** *Cf. Serfass*, 420 U.S. at 392, 95 S.Ct. at 1064 (dismissal of indictment before trial not functional equivalent of acquittal on the merits).

quittal" provided in *United States v. Martin Linen Supply Co.*, 430 U.S. at 571, 97 S.Ct. at 1354:

> [A] defendant is acquitted only when "the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged."

*Scott*, 437 U.S. at 97, 98 S.Ct. at 2197 (brackets in original).

Out of the distinction in *Scott* and *Smalis* between acquittals for "evidentiary insufficiency" and dispositions for some other reason has crept another label: reversals for "trial error." On the same day that the Supreme Court decided *Scott* it handed down *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), in which it said:

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct.

437 U.S. at 15, 98 S.Ct. at 2149. To these examples of a defective judicial process the Court might have added preindictment delay (*Scott*), an improperly drafted information (*Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977),[8] and an involuntary plea of guilty (*United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964)). Especially noteworthy in the present case was the classification in *Burks* of the "incorrect receipt or rejection of evidence" as "trial error." The current viability of this classification is indicated in the relatively recent case of *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), in which the Court held

that, where a reviewing court sets aside a defendant's conviction because evidence essential to the conviction was erroneously admitted, the Double Jeopardy Clause does not preclude a retrial:

> Burks was careful to point out that a reversal based solely on evidentiary insufficiency has fundamentally different implications, for double jeopardy purposes, than a reversal based on such ordinary "trial errors" as the "incorrect receipt or rejection of evidence." * * * While the former is in effect a finding "that the government has failed to prove its case" against the defendant, the latter "implies nothing with respect to the guilt or innocence of the defendant," but is simply "a determination that [he] has been convicted through a judicial *process* which is defective in some fundamental respect."

488 U.S. at 33, 109 S.Ct. at 290, 102 L.Ed.2d at 273 (quoting *Burks*, 437 U.S. at 14–16, 98 S.Ct. at 2148–50) (brackets and emphasis in original). *See also Palmer v. Grammer*, 863 F.2d 588 (8th Cir.1988) (discussing *Burks* and *Lockhart* ).

■ Thus, *Lockhart* carries forward the distinction recognized in *Smalis, Scott* and *Burks* between an acquittal for evidentiary insufficiency (i.e., failure of the prosecution to offer sufficient evidence to satisfy the trier of fact beyond a reasonable doubt) and a midtrial termination in favor of the accused based on a fundamental defect in the judicial process such as incorrect (in some critical respect) receipt or rejection of evidence. In the present case—the court of appeals' conclusions to the contrary notwithstanding—the trial court's ruling was not one based on evidentiary insufficiency but rather was based on the complete exclusion of all evidence offered by the prosecution because of an erroneous interpretation of the statute under which defendant was arrested. We believe that this is the kind of "trial error" for which the county can appeal and after which, if the appeal is successful, the defendant can be retried.

---

**8.** *See also, Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973) ("fatally deficient" indictment).

*See People v. Greer,* 91 Mich.App. 18, 282 N.W.2d 819 (1979) (retrial not barred after reversal of midtrial dismissal based on improper search, because dismissal was unrelated to factual guilt or innocence and therefore defendant had been neither acquitted nor convicted). *Contra, United States v. Baptiste,* 832 F.2d 1173 (9th Cir. 1987).[9]

To some extent, and even though the United States Supreme Court has not so ruled, the statements in *Burks* and *Lockhart* might appear to represent a relaxation of the vigorous pronouncements in *Sanabria* that:

> [W]hen a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous.

437 U.S. at 64, 98 S.Ct. at 2179; *see also id.* at 69, 98 S.Ct. at 2181; and in *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), that:

> The public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though "the acquittal [is] based upon an egregiously erroneous foundation."

434 U.S. at 503, 98 S.Ct. at 829 (quoting *Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962)).

But it will be observed that in *Sanabria* and *Fong Foo* there was an actual *judgment of acquittal.* This, perhaps, goes to show that, in this area at least, labels do have some constitutional significance.[10] The policy against allowing the state to appeal from a judgment of acquittal, and against allowing retrial of the accused after such a judgment, is so strong that it simply will brook no relaxation, whether or not there has been a "trial error" or other defect in the process leading to the judgment. Once an accused is actually, and in express terms, acquitted by a court, the finality of that judgment will not yield to any attempts to dilute it.

### III.

Still, labels and rubrics, while they may facilitate analysis and help square the result in a particular case with controlling precedents, ultimately fail to provide a satisfactory explanation for a given result. A better explanation, perhaps, may be found in the policies served by the Double Jeopardy Clause and in the policies underlying the rules that deny it application in all circumstances.

The purposes of the Clause are set out in this oft-quoted passage in *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957):

> The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

To the three goals articulated in this passage—enabling an accused to escape embarrassment, expense and ordeal, to be free from anxiety and insecurity, and to reduce the possibility of an unjust conviction—may be added a fourth: to protect the defendant's " 'valued right to have his

---

**9.** We might agree in the abstract with the dissent that "[a] ruling on the factual elements of a case oftentimes cannot be easily disentangled from ... trial procedures." However, in this case we find that the procedural necessity to abort the trial arose with the court's ruling on the preliminary suppression issue and prior to any putative determination of the sufficiency of the evidence on the merits. Any comments by the court on the sufficiency of the evidence therefore were surplusage; there were no findings to make, no discretion to be exercised. The fact that the court entered such findings cannot be determinative any more than the court's denomination of its action as a dismissal rather than an acquittal. For this reason, we believe *Baptiste* to have been wrongly decided.

**10.** However, according to the Supreme Court, the word "acquittal" has no "talismanic quality" for purposes of the Double Jeopardy Clause. *Serfass,* 420 U.S. at 392, 95 S.Ct. at 1064.

trial completed by a particular tribunal.'" *United States v. Jorn,* 400 U.S. at 484, 91 S.Ct. at 557 (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). This interest of the accused may be subsumed in one or more of the three noted in *Green,* but it has often been singled out by the Supreme Court (or one or more of its Justices dissenting on a particular occasion) as deserving of protection under the Double Jeopardy Clause.

Still another formulation is "the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn,* 400 U.S. at 486, 91 S.Ct. at 558. Much of the policy—not all, to be sure—behind the Double Jeopardy Clause is thus simply to protect the defendant's interest in repose. *See Lockhart v. Nelson,* 488 U.S. at 47–48, 109 S.Ct. at 294, 102 L.Ed.2d at 278 (Marshall, J., dissenting).

It is clear from the cases applying the Clause that the protection it affords to criminal defendants is not absolute. *See, e.g., United States v. DiFrancesco,* 449 U.S. at 132, 101 S.Ct. at 434. If it were, many of those cases, extending well back into the nineteenth century—*e.g., United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824) (mistrial declared for "manifest necessity" not a bar to second trial); *United States v. Ball,* (successful appeal of conviction precludes plea of double jeopardy on retrial)—would have been decided differently. The purposes enunciated in *Green* are frustrated to some extent whenever a defendant is retried; the defendant probably always undergoes additional embarrassment, expense and ordeal, continues to live in anxiety and insecurity, and remains subject to the possibility that even though innocent he may be found guilty. These interests, as the Court has recognized on numerous occasions, often are subordinated to the countervailing interest of society in the orderly administration of justice.

*See, e.g., Lockhart,* 488 U.S. at 47–48, 109 S.Ct. at 294, 102 L.Ed.2d at 278 (defendant's interest in repose balanced with society's interest in administration of justice); *Scott,* 437 U.S. at 92, 98 S.Ct. at 2194 (propriety of mistrial requires balancing defendant's right to have trial completed by a particular tribunal against public interest in insuring that justice is meted out to offenders); *Illinois v. Somerville,* 410 U.S. at 470, 93 S.Ct. at 1073 (quoting *Wade v. Hunter,* 336 U.S. at 689, 69 S.Ct. at 837) . . . . (defendant's "valued right" to have trial completed by particular tribunal must in some instances be subordinated to public's interest in fair trials designed to end in just judgments); *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963) (defendant's right to have his trial completed by particular tribunal may be subordinated to the public interest when there is "imperious necessity" to do so).[11]

The public's interest in the "orderly administration of justice" has been variously described. *See, e.g., United States v. Tateo,* 377 U.S. at 466, 84 S.Ct. at 1589 ("punishing one whose guilt is clear after he has obtained [a fair] trial"); *United States v. Scott,* 437 U.S. at 92, 98 S.Ct. at 2194 ("insuring that justice is meted out to offenders"); *Burks v. United States,* 437 U.S. at 15, 98 S.Ct. at 2149 ("insuring that the guilty are punished"); *Arizona v. Washington,* 434 U.S. at 509, 98 S.Ct. at 832 ("giving the prosecution one complete opportunity to convict those who have violated its laws").

Although, as has been noted, the rights secured by the Double Jeopardy Clause are not absolute, they come very close to being so treated in the situation described earlier—where the trial court has entered a judgment of acquittal. In that case the defendant's interest in being free of governmental oppression, *Scott,* 437 U.S. at 99, 98 S.Ct. at 2198, is at its zenith, whereas the government, having had one "full and

---

**11.** *See also State v. Saavedra,* 108 N.M. 38, 41, 766 P.2d 298, 301 (1988) (when retrial after declaration of mistrial would not create unfairness to the accused, his interest against retrial may be subordinated to the public interest in substantive justice) (citing *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830).

fair opportunity" to vindicate society's interest, *Arizona v. Washington*, 434 U.S. at 505, 98 S.Ct. at 830, is denied another. Almost the same level of protection is granted to the defendant's interests in cases where he or she is convicted but the conviction is reversed by an appellate court for evidentiary insufficiency. Here again, the government has had its full and fair opportunity to convict but has failed to muster the necessary evidence, *Burks*, 437 U.S. at 11, 98 S.Ct. at 2147, and so again the defendant's rights are ascendant in the balance.

At the opposite end of the spectrum is the case in which the defendant is convicted and his conviction is set aside on appeal on a ground other than insufficiency of the evidence to prove the offense. In that case, although the defendant may on retrial suffer the same anxiety and ordeal as he did the first time around, no one doubts that society's interest in administering its laws completely overrides the defendant's interest in freedom from these hardships. "It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *United States v. Tateo*, 377 U.S. at 466, 84 S.Ct. at 1589.

Toward the middle of the spectrum are the cases which have caused difficulty over the past thirty years. These are the cases where the trial is aborted for some reason and the state seeks to place the defendant on trial again. Lying close to the cases where the defendant is acquitted or his conviction is set aside for evidentiary insufficiency is the case in which a mistrial is declared but the trial court is found to have abused its discretion in so declaring—i.e., the mistrial is found to have been for reasons other than "manifest necessity." In this case the defendant's interest in escaping the evils of a new trial and in having his fate determined by the first tribunal outweighs society's interest in trying to convict and punish him. *See, e.g., United*

States v. Jorn; Downum v. United States. In making this determination it is relevant, of course, that the defendant either did or did not seek or consent to the mistrial or that, on the other hand, the state requested or the court *sua sponte* declared the mistrial. Where the government, through the prosecution or the court, is the moving party, the defendant's interest carries greater weight because he or she has not voluntarily surrendered it, and the government is held to a strict standard of necessity in aborting the trial and requiring the defendant to start over.[12]

At the same time, where a reviewing court is satisfied that indeed the trial court not only had good reasons for declaring a mistrial, but practically was *compelled* by the circumstances to do so—as where reversal on appeal of any conviction would be a virtual certainty, *Illinois v. Somerville*, or where there was a serious likelihood of juror bias engendered by improper comments to the jury, *Arizona v. Washington* —the trial court's decision to declare a mistrial will be accorded respect and the defendant will be required to undergo reprosecution. In such a case, especially since the likelihood of governmental oppression or manipulation is much reduced or nonexistent, the public's interest in fair trials designed to end in just judgments will prevail over the defendant's valued right to have his trial concluded before the first jury empaneled. *Arizona v. Washington*, 434 U.S. at 508, 516, 98 S.Ct. at 831, 835. *A fortiori*, where the defendant *has* sought a mistrial and thereby—at least arguably—manifested a willingness to proceed to trial again despite the disadvantages, the strength of his interest is diluted and the government's interest presses more forcefully, particularly since there is little likelihood of governmental oppression or manipulation in that case. *See Lee v. United States*.

 Finally, we come to a case like the one at bar—an instance of "trial error" in

---

12. For a recent case in this Court applying this standard *see Callaway v. State*, 109 N.M. 416,

785 P.2d 1035 (1990).

which the trial has been aborted by a trial court ruling favorable to the defendant in the sense that he or she has prevailed, at least for the time being, but no judgment of acquittal has been entered. Without canvassing the myriad possibilities that can arise in this category, we can perhaps generalize by saying that, at least where the government has not been responsible for the error and has not sought termination of the trial, the defendant's interest in ridding himself or herself of the evils attendant upon another trial may be subordinated to society's interest in the correct application of its laws. *See, e.g., United States v. Scott.* In the present case Tapia waited until jeopardy had attached before requesting that the evidence obtained as a result of his (then arguably illegal) arrest be suppressed.[13] Having waited until then, and having moved to terminate the trial through a dismissal of the charge rather than to pursue his valued right to have his trial completed by the first tribunal, he does not have a strong claim to protection of this interest. Looking at the case from the county's standpoint, it did not bring about the termination of the trial; the dismissal was entered, obviously, over its objection. There was no opportunity for oppression or manipulation on the part of the prosecution. And, most importantly, the county and the entire state have a keen interest in the correct interpretation and application of all laws governing arrests, such as the Fresh Pursuit Act. The county's desire to retry Tapia is not a case of " 'honing its trial strategies and perfecting its evidence through successive attempts at conviction,' " *Lockhart v. Nelson*, 488 U.S. at 44, 109 S.Ct. at 292, 102 L.Ed.2d at 276 (Marshall, J., dissenting) (quoting *Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982)), or of asking for a chance to " 'supply evidence ... which it failed to muster in the first proceeding.' " *Id.* 488 U.S. at 47, 109 S.Ct.

at 294, 102 L.Ed.2d at 278 (quoting *Burks v. United States*, 437 U.S. at 11, 98 S.Ct. at 2147).

In the circumstances of this case at least, we agree with the Court of Appeals for the Fifth Circuit, passing upon a question expressly reserved in *Serfass*, 420 U.S. at 394, 95 S.Ct. at 1065, that "a defendant who for reasons of trial tactics delays until mid-trial a challenge to the indictment that could have been made before the trial—and before jeopardy has attached—is not entitled to claim the protection of the double jeopardy clause when his objections to the indictment are sustained." *United States v. Kehoe*, 516 F.2d 78, 86 (5th Cir.1975) (footnote omitted). We also agree with the United States Supreme Court: "That any judicial system should encourage litigants to raise objections at the earliest rather than latest possible time seems self-evident." *United States v. Tateo*, 377 U.S. at 468 n. 4, 84 S.Ct. 1590 n. 4. Prohibiting retrial of the defendant in these circumstances could discourage trial courts from granting valid motions to suppress, knowing that an improper denial of such a motion could be corrected on appeal but that an improper granting of the motion would prohibit further prosecution. *Cf. id.* at 466, 84 S.Ct. at 1589: "[I]t is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution."

We conclude that double jeopardy does not prevent further prosecution of Tapia on remand and that his motion to dismiss the county's appeal should have been denied by the court of appeals.

---

**13.** He had, of course, known of the ground for his motion to suppress well before his trial. He had in fact even argued the illegality of the arrest and consequent inadmissibility of the evidence at his trial in municipal court. Our rules of criminal procedure provide that a motion to suppress evidence is to be made within twenty days after entry of a plea, SCRA 1986, 5–212(C), but they do not *require* that such a motion be made prior to trial. *See id.,* Committee Commentary; *State v. Doe,* 93 N.M. 143, 148, 597 P.2d 1183, 1188 (Ct.App.1979) (defendant's duty to move for suppression of evidence before trial is discretionary).

## IV.

■ Although the court of appeals did not pass upon the merits of the county's appeal, it would serve no purpose to remand the case to that court for a ruling. The district court's order dismissing the charges against Tapia was erroneous; the arrest was valid, and the evidence obtained pursuant thereto should not have been suppressed. *Incorporated County of Los Alamos v. Johnson.*

In ruling in this fashion, we are cognizant of the factual differences between this case and *Johnson*. In *Johnson*, the police officer followed the defendant for several miles and observed him making an improper left turn, driving erratically, and touching or straddling the highway's yellow center line and white side line. This erratic behavior gave rise to a reasonable suspicion that the defendant in that case was driving while intoxicated. In the present case the district court found no basis for such a suspicion, finding instead that the officer had observed only defendant's running a stop sign and operating his motor vehicle with an inoperative tail light—petty misdemeanors under the applicable municipal ordinances.

It is not disputed that, if the officer had authority under the Fresh Pursuit Act to pursue Tapia into Santa Fe County and stop him there for violation of the municipal ordinances, the officer's subsequent administration of a field sobriety test, based on his observations at that time, and his arrest of defendant for DWI were valid. The principal opinion in *Johnson* holds that, since the officer had reasonable grounds to believe the suspect there was driving while intoxicated and since the officer had no way of knowing whether, upon conviction, the suspect would be guilty of a "misdemeanor" (for a second or subsequent conviction of DWI) or a "petty misdemeanor" (for a first conviction), the pursuit was authorized under the Fresh Pursuit Act and the arrest was valid. In a specially concurring opinion, however, Justice Baca (joined by Justice Ransom) eschewed, for purposes of construing the Fresh Pursuit Act, the distinction between

a misdemeanor and a petty misdemeanor and took the view that the Fresh Pursuit Act authorizes pursuit of a suspect into another county, whether the pursuing officer has reasonable cause to believe the suspect guilty of a misdemeanor or only of a petty misdemeanor. Justices Baca and Ransom, in other words, construed the term "misdemeanor" in NMSA 1978, Section 31–2–8(B), as including a "petty misdemeanor."

We believe that this construction of the statute is correct and that, accordingly, the arrest in the instant case was valid. The policy consideration identified by Justice Scarborough in *Johnson* (removing DWI drivers from New Mexico roads in order to protect the public) may be absent under this broadened interpretation, but it nonetheless finds support in other policies: The municipal officer is not required to remember the perhaps arbitrary classification of the degree of misdemeanor offense in making the decision whether to pursue or not to pursue, and the suspect is not encouraged to streak for the county line (or other territorial boundary) in an effort to escape prosecution for one or more offenses, even if those offenses are properly classified as "petty."

The decision of the court of appeals is reversed, and the cause is remanded to the district court with instructions to vacate the order of dismissal and to reinstate the cause for trial on the merits.

IT IS SO ORDERED.

SOSA, Jr., C.J., and RANSOM and BACA, JJ., concur.

WILSON, J., dissents.

WILSON, Justice, dissenting.

I respectfully dissent from the majority opinion in the following respects.

I agree with the majority that NMSA 1978, Section 31–2–8 (Repl.Pamp.1984) of the Uniform Act on Fresh Pursuit authorizes the extraterritorial arrest of petty misdemeanants who are apprehended after hot pursuit. A reading of the statute requires such an interpretation, and public policy demands that petty misdemeanants

not be allowed a safe haven across county lines.

I cannot agree with the majority, however, that the defendant in this case may be retried on the same charges which he successfully defeated at his trial on the merits. This conclusion is even more compelling under the majority's opinion which recognizes that the previous law would not have allowed the police officer to pursue and arrest this defendant, a petty misdemeanant, across county lines. Without the benefit of our present opinion, the district court accurately interpreted and applied the law as it existed at the time of trial; the district court's judgment should now be upheld.

The majority interprets the district court's "dismissal" of all charges against the defendant as "trial error" rather than acquittal. However, "what constitutes an 'acquittal' is not to be controlled by the form of the judge's action." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977) (citing *United States v. Sisson*, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970)). Rather, the appellate courts must determine whether the ruling of the judge below, "whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *Id.* 430 U.S. at 571, 97 S.Ct. at 1355. The district court in this case called its ruling a dismissal; it was a "legal determination on the basis of facts adduced at the trial relating to the general issue of the case." *United States v. Sisson*, 399 U.S. 267, 290 n. 19, 90 S.Ct. 2117, 2130 n. 19, 26 L.Ed.2d 608 (1970). As such, it is the functional equivalent of an acquittal on the merits. *See also Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

Once a judgment of acquittal has been entered, whether it is based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, it may not be appealed and terminates the prosecution. *United States v. Scott*, 437 U.S. 82, 91, 98 S.Ct. 2187, 2193, 57 L.Ed.2d 65 (1978). "Thus when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous." *Sanabria v. United States*, 437 U.S. 54, 64, 98 S.Ct. 2170, 2179, 57 L.Ed.2d 43 (1978).

A ruling on the factual elements of a case oftentimes cannot be easily disentangled from the trial procedures involved. This is reflected in the plethora of United States Supreme Court cases recently emerging regarding double jeopardy. Each new case modifies the legal analysis espoused in the preceding cause and alters the standard of review on the issue.

This ever-changing area of law must be applied to the particulars of this case. Noting the current persuasion of the United States Supreme Court, and giving thoughtful consideration to the policies underlying the double jeopardy doctrine as enunciated in the majority opinion above, I am compelled to find that double jeopardy bars retrial in this case. The district court received evidence during a trial on the merits, made findings of fact and conclusions of law based on the evidence presented, and determined that there was not reasonable suspicion to stop the defendant for DWI. The district court made a legal ruling, supported by the facts, that the plaintiff could not provide sufficient evidence to bear its burden of proof. Once the defendant moved to suppress all of the plaintiff's evidence as inadmissible fruit of an illegal arrest, there was no other evidence available to prove the defendant's guilt. Consequently, the district court dismissed all charges against the defendant.

While the majority concludes that the defendant's motion to dismiss all charges was *essentially* a motion for a mistrial or a motion to stay the proceedings to allow the plaintiff an appeal, I believe the defendant will be surprised to learn that he had made such a request. It is my opinion that the defendant specifically requested a final adjudication of the charges against him and that the district court in this case clearly acquitted him of these charges, in substance as well as in form.

The case before us is on all fours with a Ninth Circuit case in which the court of appeals found double jeopardy barred the defendant's retrial. In *United States v. Baptiste*, 832 F.2d 1173 (9th Cir.1987) the defendant was charged with driving under the influence of alcohol. Trial was held before the magistrate court, and after the government presented its case and rested, the defendant moved for a judgment of acquittal. The magistrate court determined that the police officer lacked probable cause to order the defendant out of his car. Consequently, the court refused to consider any evidence submitted by the government and dismissed the charges. The government appealed, and the district court thereupon dismissed the case on double jeopardy grounds. Shortly thereafter, the district court sua sponte vacated its dismissal and remanded the case for a retrial, finding that the magistrate court erred in determining there was no probable cause. The district court decided that the erroneous probable cause determination by the magistrate court resulted in the suppression of evidence and a simple dismissal rather than a judgment of acquittal.

As in the case before us, the government in the *Baptiste* case argued on appeal that the magistrate did not evaluate the evidence, but rather dismissed the case on a perceived violation of state law. However, the Ninth Circuit disagreed. They stated:

> The proper analysis is that because the magistrate refused to consider any of the government's evidence, there was no evidence available to prove Baptiste's guilt. This can only mean that the "evidence was legally insufficient to convict." Hence, the magistrate's action is properly characterized as a judgment of acquittal. *See* [*U.S. v.*] *Ember*, 726 F.2d [522] at 524 [ (9th Cir.1984) ]. That the magistrate may have erred in his ruling is irrelevant. *See Sanabria*, 437 U.S. at 68–69, 98 S.Ct. at 2181 (erroneous evidentiary ruling leading to erroneous judgment of acquittal for insufficient evidence bars further prosecution).

*United States v. Baptiste*, 832 F.2d 1173, 1175 (9th Cir.1987). I find this legal analysis in the *Baptiste* case convincing, especially in light of the remarkable factual similarities to the case at bar.

On the issue of whether retrial is permissible because the district court's dismissal came as the result of the defendant's motion to suppress evidence, as opposed to an unqualified demand for acquittal and dismissal, I find the distinction irrelevant. After a lengthy discussion of the effect of a defendant's request on a double jeopardy proceeding, whether it be the defendant's motion for a new trial or a motion for acquittal, the United States Supreme Court stated: "In our view it makes no difference that a defendant has sought a new trial as one of his remedies, or even as the sole remedy." *Burks v. United States*, 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). In so ruling, the Supreme Court weighed the policy reasons behind allowing retrial where the accused successfully seeks review of a conviction and expressly overruled prior decisions suggesting that by moving for a new trial, a defendant waives his right to a judgment of acquittal on the basis of evidentiary insufficiency. I agree that it is immaterial that the trial termination in this case followed the defendant's motion to dismiss since the dismissal was the functional equivalent of an acquittal.

The majority opinion also makes much of the fact that the defendant waited until jeopardy had attached to raise his motion to suppress, stating:

> Having waited until then, and having moved to terminate the trial through a dismissal of the charge rather than to pursue his valued right to have his trial completed by the first tribunal, he does not have a strong claim to protection of this interest. Looking at the case from the county's standpoint, it did not bring about the termination of the trial; the dismissal was entered, obviously, over its objection.

What the majority is saying, although carefully camouflaged, is that the defendant waived his constitutional right of jeopardy by objecting belatedly to the evidence. I disagree; constitutional rights should not

be jeopardized by tactical decisions or cosmetic procedures.

First, it should be noted that our local rules, specifically SCRA 1986, Rule 5–601, do not mandate a specific time in which to file a motion to suppress evidence. The "defendant's duty to move for suppression of evidence before trial is discretionary." *State v. Doe*, 93 N.M. 143, 148, 597 P.2d 1183, 1188 (Ct.App.1979) (interpreting prior Rule 18, N.M.R.Crim.P.).

> Although orderly procedure requires the motion to be made earlier [interpreting Fed.R.Crim.P. 41(e) ], the court in its discretion may entertain a motion at the trial stage. That discretion should be liberally exercised in the furtherance of justice. *Gallegos v. United States*, 237 F.2d 694 (10th Cir.1956). In other words, the failure of defendant to file a motion to suppress prior to trial did not foreclose defendant's right to object to the admission of evidence during the trial. *Glisson v. United States*, 406 F.2d 423 (5th Cir.1969).

*Id.* at 148, 597 P.2d at 1188.

Second, unlike *State v. Aragon*, 89 N.M. 91, 547 P.2d 574 (Ct.App.), *cert. denied*, 89 N.M. 206, 549 P.2d 284 (1976), *overruled on other grounds, State v. Rickerson*, 95 N.M. 666, 625 P.2d 1183, *cert. denied*, 454 U.S. 845, 102 S.Ct. 161, 70 L.Ed.2d 132 (1981), the failure of the defendant here to file his motion to suppress prior to trial did not result in prejudice to the plaintiff. The plaintiff in this case had advance notice that the defendant would be raising this motion to suppress evidence; the defendant had raised the motion previously at the municipal court level. While the plaintiff now complains that the defendant's motion to suppress was untimely, the plaintiff did not raise this critical issue itself in a pretrial hearing; nor did it object to the district court's ruling to dismiss or offer to proceed with trial by presenting other evidence against the defendant after the district court granted the defendant's motion to suppress. Furthermore, the plaintiff failed to protect its anticipatory appellate rights by failing to specifically request the district court to declare a mistrial for manifest necessity or stay the proceedings in order to take an interlocutory appeal. The majority apparently agrees with Judge Bivins's dissent in the court of appeals's opinion below that "the proper procedure would have been to allow the county to proceed, and if it had no further proof, then dismiss. If defendant had insisted on completion of his trial, as he should have, this issue would not have arisen."

As the Supreme Court stated in *Sanabria v. United States*, "[l]egal consequences ordinarily flow from what has actually happened, not from what a party might have done from the vantage of hindsight." 437 U.S. 54, 65, 98 S.Ct. 2170, 2179, 57 L.Ed.2d 43 (1978). I believe the plaintiff in this case received a fair opportunity to bring the full weight of the state against the defendant in district court; I therefore do not think it now rightfully can claim that no jeopardy attached simply because the defendant successfully challenged the evidence against him.

For the reasons stated above, I respectfully dissent.