2008-NMSC-055

193 P.3d 548

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Juan MARQUEZ, Defendant–Respondent.**

**No. 30,709.**

Supreme Court of New Mexico.

Sept. 3, 2008.

Gary K. King, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Hugh W. Dangler, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

CHÁVEZ, Chief Justice.

{1} Defendant Juan Marquez was found guilty by a jury of aggravated DWI and resisting, evading, or obstructing an officer.

The Court of Appeals reversed the conviction for DWI, holding that the initial stop leading to Defendant's arrest was invalid under Section 31–2–8 of the Fresh Pursuit Act, NMSA 1978, §§ 31–2–1 to –8 (1937, as amended), and the charge should therefore have been dismissed. *State v. Marquez*, 2007–NMCA–151, ¶¶ 1, 8, 15–16, 143 N.M. 79, 173 P.3d 1. We conclude that the arresting officer did have the authority to stop Defendant. We therefore reverse the Court of Appeals and affirm Defendant's conviction and sentence.

## I. BACKGROUND

{2} On June 23, 2004, Officer James Seely was sitting in his marked car within the city limits of Dexter, New Mexico, when he heard Defendant "rev his motor making [a] loud noise with the muffler system." Defendant began to slow down when the officer made eye contact with him. After Defendant had begun to slow down, the officer's radar indicated that Defendant was traveling thirty-two miles per hour in a thirty-mile-per-hour zone.

{3} The officer turned on his overhead lights, but not his siren, and began to follow Defendant. The officer followed Defendant for over a mile until Defendant eventually pulled over outside the Dexter city limits. No evidence was introduced that the officer observed any other infractions before the stop. During the stop, the officer noticed that Defendant showed signs of intoxication. After Defendant failed several field sobriety tests, the officer told Defendant that he was being placed under arrest for DWI. The officer claimed that Defendant resisted arrest both verbally and physically.

{4} Based on the noise, Defendant was charged with racing on highways, contrary to NMSA 1978, Section 66–8–115 (1969). The officer also believed that the noise violated a Dexter municipal ordinance, but he did not charge Defendant with violating that ordinance. Defendant was also charged with operating a motor vehicle without proof of insurance, contrary to NMSA 1978, Section 66–5–205 (1998); aggravated DWI, contrary to NMSA 1978, Section 66–8–102 (2004); battery on a police officer, contrary to NMSA 1978, Section 30–22–24 (1971); and resisting arrest, contrary to NMSA 1978, Section 30–22–1(D) (1981).

{5} Before trial, Defendant filed a motion to dismiss based on lack of jurisdiction. Defendant argued that the noise ordinance is a non-arrestable offense, and therefore the officer did not have the authority to pursue him outside the Dexter city limits pursuant to the Fresh Pursuit Act. The trial court denied Defendant's motion, finding that the officer pursued Defendant based on violation either of the Dexter noise ordinance or the racing ordinance, which prohibits an "exhibition of speed or acceleration." Section 66–8–115(A). Defendant was tried only on the DWI, battery, and resisting arrest charges, all of which stemmed from the events that occurred after Defendant was pulled over. At the end of trial, Defendant moved to dismiss the DWI charge, arguing that the officer used the noise from his car as a pretext to stop him. The trial court reviewed this as a motion for directed verdict and denied the motion, finding that Defendant's speed and possible exhibition driving violation were non-pretextual reasons for pulling him over.

{6} Defendant was convicted on the resisting arrest and DWI charges, but acquitted on the battery charge. Defendant appealed his conviction for DWI, arguing again that the Fresh Pursuit Act did not give the officer the authority to pursue and arrest him outside the Dexter city limits. *Marquez*, 2007–NMCA–151, ¶ 3, 143 N.M. 79, 173 P.3d 1. The Court of Appeals agreed, reversed the DWI conviction, and remanded for amendment of the sentence. *Id.* ¶¶ 15–16. The case reaches us on the State's petition for writ of certiorari.

## II. DISCUSSION

{7} Interpretation of the Fresh Pursuit Act is an issue of statutory construction that we review de novo. *State v. Padilla*, 2008–NMSC–006, ¶ 7, 143 N.M. 310, 176 P.3d 299. When the Legislature enacts a statute, we presume that it is aware of existing statutes. *State v. Maestas*, 2007–NMSC–001, ¶ 21, 140 N.M. 836, 149 P.3d 933. Statutes concerning the same subject matter must be read in connection with each other.

*Quantum Corp. v. State Taxation & Revenue Dep't,* 1998–NMCA–050, ¶ 8, 125 N.M. 49, 956 P.2d 848.

{8} The Fresh Pursuit Act states that

[a]ny county sheriff or municipal police officer who leaves his jurisdictional boundary while in fresh pursuit of a misdemeanant whom he would otherwise have authority to arrest shall have the authority to arrest that misdemeanant anywhere within this state and return him to the jurisdiction in which the fresh pursuit began without further judicial process.

Section 31–2–8(A). To determine whether the officer's stop of Defendant was valid, we must determine what the Legislature meant by "authority to arrest." *Id.*

{9} The Court of Appeals held that "authority to arrest" means the officer must be pursuing the suspect for an "arrestable offense." *Marquez,* 2007–NMCA–151, ¶ 6, 143 N.M. 79, 173 P.3d 1 (internal quotation marks and citation omitted). The Court, however, never defined "arrestable offense." Rather, the Court required the State to produce evidence, in the form of the municipal ordinance itself, to show that the offense is "arrestable." *Id.* ¶ 9. Following its opinion in *State v. Rodarte,* 2005–NMCA–141, ¶¶ 14–16, 138 N.M. 668, 125 P.3d 647, the Court noted that "an arrest for a non-jailable offense is constitutionally unreasonable in the absence of specific and articulable facts warranting a custodial arrest rather than a citation." *Marquez,* 2007–NMCA–151, ¶ 12, 143 N.M. 79, 173 P.3d 1. As a result, the Court of Appeals equated "arrestable offense" with "jailable offense." The word "arrestable," however, appears nowhere in the New Mexico statutes, and within New Mexico case law it appears only in the *Marquez* opinion.

■ {10} Rather than injecting a new term into the analysis, we instead look to the plain language of the Fresh Pursuit Act and ask whether the pursuing officer had the authority to arrest Defendant. Police officers have the authority to make warrantless arrests for non-jailable misdemeanors under NMSA 1978, Section 3–13–2(A)(4)(d) (1988), which allows an officer to "apprehend any person in the act of violating the laws of the state or the ordinances of the municipality

and bring him before competent authority for examination and trial." *Rodarte,* 2005–NMCA–141, ¶ 19, 138 N.M. 668, 125 P.3d 647. This authority, however, does not extend to a *custodial* arrest when the Legislature has stated a preference for citations only. *Id.* ¶¶ 19–20.

■ {11} Nothing in the Fresh Pursuit Act indicates that the Legislature intended "authority to arrest" to be limited to a custodial arrest. In fact, reference to other statutes indicates that the Legislature intended no such limit. Under NMSA 1978, Section 66–8–123(A) (1989), which provides for citations in lieu of custodial arrest for certain violations of the Motor Vehicle Code, "a person is *arrested*" for the offense, "the *arresting* officer" prepares the citation, "the *arrested* person" signs the citation, and "the *arrested* person" receives a copy of the citation before being released. (Emphasis added.) In *State v. Ochoa,* we recognized that the word "arrest" in Section 66–8–123(A) refers to an investigative detention to issue a citation for a traffic violation. 2008–NMSC–023, ¶ 14, 143 N.M. 749, 182 P.3d 130.

■ {12} Under this definition of "arrest," the officer had the authority to arrest Defendant. Both speeding and exhibition driving are *misdemeanor* violations of the Motor Vehicle Code. NMSA 1978, § 66–8–7(A) (1989). Section 66–8–123(A) gave the officer the authority to arrest Defendant by pulling him over and issuing a citation for the alleged violations. As a result, under the Fresh Pursuit Act, he could pursue Defendant into another jurisdiction to issue the citation. Similarly, if violation of the municipal noise ordinance was a misdemeanor, then the officer had the authority under Section 3–13–2(A)(4)(d) to effect the same type of arrest for Defendant's alleged violation of that ordinance.

{13} Because the officer had the authority to pursue Defendant outside the city limits, his subsequent administration of field sobriety tests and arrest of Defendant for DWI were valid. We examined a similar situation in *County of Los Alamos v. Tapia,* 109 N.M. 736, 790 P.2d 1017 (1990). In that case, the arresting officer observed the defendant run-

ning a stop sign and driving with an inoperative tail light. *Id.* at 738, 790 P.2d at 1019. The officer pursued the defendant into the neighboring county, where he arrested the defendant for DWI based on his observations during the stop. *Id.* Although we did not look specifically at the meaning of "authority to arrest" in *Tapia*, we held that the officer had the authority to pursue the defendant for petty misdemeanor traffic violations, and therefore the arrest for DWI was valid. *Id.* at 745, 790 P.2d at 1026. We see no factual distinction between this case and *Tapia*.

## III. CONCLUSION

{14} Nothing in the Fresh Pursuit Act or related statutes indicates that an arrest is limited to a custodial arrest. As defined by the Legislature, an arrest includes pulling a motorist over to issue a citation. The evidence for Defendant's DWI conviction was developed following a lawful, non-custodial arrest pursuant to the Fresh Pursuit Act. Defendant's conviction and sentence for DWI are therefore affirmed.

{15} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, PETRA JIMENEZ MAES, RICHARD C. BOSSON, and CHARLES W. DANIELS, Justices.