# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2009-NMSC-042**

**Filing Date: August 7, 2009**

**Docket No. 30,785**

**CITY OF LAS CRUCES**,

    **Plaintiff-Appellant,**

**v.**

**LAUREN ROGERS**,

    **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Stephen Bridgforth, District Judge**

Harry Sinclair Connelly, Jr., Deputy City Attorney
Jared Abrams
Las Cruces, NM

for Appellant

Hugh W. Dangler, Chief Public Defender
Susan Roth, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## OPINION

**MAES, Justice.**

**{1}**     The sole issue presented in this appeal is whether the City of Las Cruces (City) has the authority to enforce Las Cruces Municipal Code (LCMC) 1998, Section 27-12-6-12.1(A) (2004, prior to 2007 amendment), which prohibits individuals from driving while under the influence of intoxicating liquor (DWI) on private property without the written consent of the property owner under NMSA 1978, Section 3-49-1(O) (1967).  We conclude that, under Section 3-49-1(O), "the power of a municipality to control such activities on private property is contingent or subject to the municipality first obtaining the written consent of the property owner."  *City of Rio Rancho v. Young*, 119 N.M. 324, 327, 889 P.2d 1246, 1249 (Ct. App.

1

1995).  Accordingly, we affirm the judgment of the district court, which dismissed the complaint against Lauren Rogers (Defendant) pursuant to Section 3-49-1(O) and *Young*.

**FACTS AND PROCEDURAL HISTORY**

**{2}**    The record reflects the following facts.  On April 21, 2007, Defendant bought a package of cigarettes at a Pic Quick convenience store located in the City of Las Cruces. John Trujillo, a police officer with the Las Cruces police department, followed Defendant into the parking lot on the suspicion that she might be intoxicated.  Officer Trujillo stopped Defendant as she was preparing to drive away and administered a series of field sobriety tests, which Defendant failed.  Thereafter, Defendant was arrested and charged in municipal court with DWI contrary to LCMC Section 27-12-6-12.1(A).

**{3}**    The municipal court dismissed the complaint against Defendant and the City appealed to the district court.  *See* NMSA 1978, § 35-15-11 (1959), *invalidated in part by City of Las Cruces v. Sanchez*, 2007-NMSC-042, ¶ 20, 142 N.M. 243, 164 P.3d 942.  In the district court, Defendant moved to dismiss the complaint, claiming that the City lacked authority to enforce its DWI ordinance on private property without the property owner's written consent pursuant to Section 3-49-1(O) and *Young*.  The City responded that the Court of Appeals' holding in *Young* implicitly had been overruled by *State v. Johnson*, 2001-NMSC-001, 130 N.M. 6, 15 P.3d 1233, which the City claimed "abolished the public property/private property distinction with respect to DWI."

**{4}**    The district court held that pursuant to Section 3-49-1(O) and *Young*, the City "cannot enforce its traffic code on private property absent a showing that the owner of the private property has given express written consent."  Because the Pic Quick parking lot was private property and the property owner had not given "express, written consent to the City of Las Cruces to allow the City to enforce its traffic code within the parking lot," the district court dismissed the complaint against Defendant.  The City appealed directly to this Court. *See* § 35-15-11 (providing municipalities with "the right to appeal . . . to the supreme court from any decision of the district court in every case brought for the violation of an ordinance of said municipality").

**DISCUSSION**

**{5}**    The City's appeal requires us to construe the statutory scheme governing municipal ordinances.  *See* NMSA 1978, § 3-17-1 to -6 (1965, prior to 2007 amendment).  "Statutory construction is a question of law that is reviewed de novo."  *State v. Romero*, 2006-NMSC-039, ¶ 6, 140 N.M. 299, 142 P.3d 887.

**{6}**    Section 3-17-1(B) provides that a municipality may adopt ordinances "not inconsistent with the laws of New Mexico for the purpose of . . . providing for the safety, preserving the health, promoting the prosperity and improving the morals, order, comfort and convenience of the municipality and its inhabitants."  A municipal ordinance is inconsistent

with the laws of New Mexico if "'the ordinance permits an act the general law prohibits, or vice versa.'" *Stennis v. City of Santa Fe*, 2008-NMSC-008, ¶ 21, 143 N.M. 320, 176 P.3d 309 (quoting *Bd. of Comm'rs of Rio Arriba County v. Greacen*, 2000-NMSC-016, ¶ 16, 129 N.M. 177, 3 P.3d 672).

**{7}**      Section 3-17-6(A)(10) provides municipalities with the authority to adopt "by ordinance the conditions, provisions, limitations and terms of [a] . . . traffic code." Additionally, pursuant to Section 3-49-1(L), municipalities may "regulate traffic and sales upon streets, sidewalks and public places." *See also City of Roswell v. Mitchell*, 56 N.M. 201, 203, 242 P.2d 493, 495 (1952) ("The power to regulate the use of the streets is a delegation of the police power of the state government and whatever reasonably tends to make regulation effective, is a proper exercise of that power." (Internal quotation marks and citation omitted.)). Moreover, Section 3-49-1(O) provides municipalities with the authority to "regulate the speed and traffic conditions on *private property*" with "*the written consent of the owner.*" (Emphasis added.)

**{8}**      In *Young*, the Court of Appeals addressed whether, pursuant to Section 3-49-1(O), a municipality "may enforce its traffic code for alleged violations that have occurred on private property without the written consent of the property owner." *Young*, 119 N.M. at 325, 889 P.2d at 1247. The defendant had been arrested and charged with a violation of the City of Rio Rancho's DWI ordinance for conduct that occurred entirely on private property, namely, the parking lot of the Rio Rancho Inn. At the time of the arrest, the City did not have the written consent of the Rio Rancho Inn to regulate speed and traffic conditions within its parking lot. *Id.* The Court of Appeals noted that, although the City "had the authority to enact and enforce its traffic ordinance within its city limits," this authority was limited by "constitutional or legislative enactments expressly denying or restricting the City's legislative powers or functions." *Id.* at 326, 889 P.2d at 1248. The Court agreed with the defendant's contention that Section 3-49-1(O) places "specific limitations on all municipalities, including home rule municipalities, precluding the enforcement of municipal traffic ordinances on privately owned property located within the municipality unless written authorization has previously been obtained from the owner of such property." *Young*, 119 N.M. at 325, 889 P.2d at 1247; *see also State v. Nash*, 2007-NMCA-141, ¶ 3, 142 N.M. 754, 170 P.3d 533. Accordingly, "the power of a municipality to control such activities on private property is contingent or subject to the municipality first obtaining the written consent of the property owner." *Young*, 119 N.M. at 327, 889 P.2d at 1249. The Court, therefore, affirmed the district court's order granting the defendant's motion to dismiss the complaint. *Id.*

**{9}**      Pursuant to *Young*, it is clear that the district court properly granted Defendant's motion to dismiss the complaint. The City argues, however, that this Court implicitly overruled *Young* in *Johnson*, wherein we considered "whether the State can charge a defendant with DWI pursuant to NMSA 1978, § 66-8-102 (1997, prior to 1999 amendment), when the defendant is on private property and in actual physical control of a non-moving vehicle." *Johnson*, 2001-NMSC-001, ¶ 1. In *Johnson*, we addressed specifically whether

3

the Legislature intended "to place a geographical limitation on the offense of DWI depending on the type of activity constituting the 'driving' of a vehicle." *Id.* ¶ 5. We concluded that under the plain language of Section 66-8-102, "[t]he only geographical limitation to the offense of DWI is found in the operative words 'within this state.'" *Id.* ¶ 7 (quoting § 66-8-102(A)). We observed that the purpose of the DWI statute is to "protect the public from the risk of harm posed by intoxicated drivers," *id.* ¶ 17, and that

> it is just as important to regulate physical control of a vehicle on private property as it is on a public highway, especially since there is a widespread use of motor vehicles, not only on highways, but in shopping centers and other places that are private yet open to the public.

*Id.* ¶ 21. Accordingly, we held that "a person can violate Section 66-8-102 on public as well as private property." *Id.* ¶ 8.

**{10}** Our analysis in *Johnson* was limited to Section 66-8-102, the state statute that prohibits DWI. In *Young*, as in the present case, however, the defendant was not charged with a violation of Section 66-8-102, but rather, with a violation of a municipal ordinance prohibiting DWI. Moreover, the question presented in *Young* was not whether the City of Rio Rancho intended its DWI ordinance to apply to conduct on private property located within the municipality. Indeed, consistent with *Johnson*, the Court of Appeals held that the DWI ordinance, by its plain language, was intended to apply to conduct on private property. *Young*, 119 N.M. at 326, 889 P.2d at 1248. The Court held, however, that the ordinance conflicted with Section 3-49-1(O), and, therefore, was unenforceable. *Id.* at 327, 889 P.2d at 1249. Because *Johnson* did not address the scope of municipal power to enforce a DWI ordinance on private property without the written consent of the property owner under Section 3-49-1(O), it did not overrule *Young*, either implicitly or otherwise.

**{11}** Alternatively, the City claims that *Young* was wrongly decided because a DWI ordinance does not regulate "speed or traffic conditions," and, therefore, does not fall within the purview of Section 3-49-1(O). In support of this claim, the City argues that the terms "speed" and "traffic" both "contemplate[] movement," whereas the crime of "DWI does not require any movement." *See Boone v. State*, 105 N.M. 223, 227, 731 P.2d 366, 370 (1986) ("Section 66-8-102 does not require motion of the vehicle as an element of the offense of DWI.").

**{12}** Section 3-49-1 does not define the term "traffic." To determine whether the City's DWI ordinance regulates "traffic" we look to statutes governing the same general subject matter. *See State v. Marquez*, 2008-NMSC-055, ¶ 7, 145 N.M. 1, 193 P.3d 548 ("Statutes concerning the same subject matter must be read in connection with each other."). The Motor Vehicle Code, NMSA 1978, § 66-1-1 to -8-141 (1978, as amended), defines the term "traffic" as "pedestrians, ridden or herded animals, vehicles and other conveyances either singly or together using any highway for purposes of travel." Section 66-1-4.17(F). Because the City's DWI ordinance regulates the travel of vehicles or other conveyances within the

municipality, we conclude that it regulates "traffic" within the meaning of Section 3-49-1(O). Indeed, we note that the City codified its DWI ordinance as a part of its traffic code. *See* LCMC § 27-12-6-12.1.

**{13}** We recognize that the term "traffic" is limited to travel on a "highway," which is defined as "every way or place generally open to the use of the public as a matter of right for the purpose of vehicular travel, even though it may be temporarily closed or restricted for the purpose of construction, maintenance, repair or reconstruction." Section 66-1-4.8(B). Section 66-7-2(A) provides, however, that "[t]he provisions of Chapter 66, Article 7 NMSA 1978 relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways, *except where a different place is specifically referred to in a given section*." (Emphasis added.) Section 3-49-1(O) specifically refers to the regulation of "traffic conditions on *private property*." (Emphasis added.) Section 3-49-1(O) thus falls within the limited exception contemplated by Section 66-7-2(A), and, therefore, encompasses municipal ordinances that prohibit DWI on private property. Accordingly, the Court of Appeals properly held in *Young* that

> Section 3-49-1(O) specifies the sole method by which municipalities, including home rule municipalities, may extend the reach of their traffic ordinances regulating speed and traffic conditions to violations asserted to have taken place on private property. Any changes in the application or reach of the statute are matters to be addressed by the legislature, not the courts.

119 N.M. at 327, 889 P.2d at 1249.

**{14}** As the City points out, municipalities generally are permitted greater latitude in the enforcement and punishment of DWI offenses than for the violation of other municipal ordinances. *See, e.g.*, § 3-17-1(C)(2) (permitting municipalities to impose "a fine of not more than one thousand dollars ($1,000) or imprisonment for not more than three hundred sixty-four days or both" for the violation of a DWI ordinance); NMSA 1978, § 35-14-2(C) (1988) (providing municipal courts with statewide personal jurisdiction over defendants served with criminal process for the violation of a DWI ordinance). The severity of the penalties attendant to the violation of a DWI ordinance, as well as a municipality's expanded scope of enforcement, reflect the compelling public interest in "deterring individuals from driving while intoxicated." *Johnson*, 2001-NMSC-001, ¶ 17 (internal quotation marks and citation omitted). Despite this compelling public interest, Section 3-49-1(O) plainly reflects the Legislature's intent to circumscribe municipal authority to enforce DWI ordinances on private property without the property owner's written consent.

**{15}** This does not mean, however, that municipalities are powerless to prevent the offense of DWI on private property within their city limits. An individual who commits DWI on private property may be arrested and charged with a violation of the state statute prohibiting DWI, Section 66-8-102, regardless of whether the municipality has obtained the prior written

consent of the property owner. *See Johnson*, 2001-NMSC-001, ¶ 24. Indeed, Section 66-8-102 and LCMC Section 27-12-6-12.1 both prohibit the same conduct. *Compare* § 66-8-102(A) ("It is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state."), *with* LCMC § 27-12-6-12.1 ("It is unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle within this municipality."). Accordingly, prosecution in magistrate court or district court for DWI contrary to Section 66-8-102 is sufficient to protect the public's interest in deterring individuals from driving while intoxicated.

**CONCLUSION**

**{16}** Pursuant to Section 3-49-1(O), the City lacked the authority to enforce its DWI ordinance on private property without the written consent of the property owner. Accordingly, we affirm the district court's order of dismissal.

**{17}** **IT IS SO ORDERED.**

_____

**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____

**EDWARD L. CHÁVEZ, Chief Justice**

_____

**PATRICIO M. SERNA, Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**CHARLES W. DANIELS, Justice**

**Topic Index for *City of Las Cruces v. Rogers*, No. 30,785**

| | |
|---|---|
| **CL** | **CRIMINAL LAW** |
| CL-DG | Driving While Intoxicated |
| **GV** | **GOVERNMENT** |
| GV-MU | Municipalities |
| GV-OR | Ordinances |

**ST**            **STATUTES**

ST-IP            Interpretation
ST-LI            Legislative Intent