IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-021

Filing Date: April 30, 2010

Docket No. 31,612

THERESA ORTIZ for the ESTATE
OF ROBERT BAROS, deceased,

 Worker-Respondent,

v.

OVERLAND EXPRESS, uninsured employer,
and NEW MEXICO WORKERS' COMPENSATION
ADMINISTRATION UNINSURED EMPLOYERS' FUND,

 Employer-Insurer-Petitioners.

ORIGINAL PROCEEDING ON CERTIORARI
Gregory D. Griego, Workers' Compensation Judge

Richard Nelson
Albuquerque, NM

for Petitioner Pro Se

Richard J. Crollett
Sharon L. Gentry
Albuquerque, NM
for Petitioner

Law Offices of Jeffrey C. Brown
Jeffrey C. Brown
Albuquerque, NM

for Respondent

OPINION

MAES, Justice.

1

**{1}** Robert Baros (Worker) died as a result of an accident that occurred while he was working as a delivery service driver/courier for Overland Express (Employer). The Workers' Compensation Judge (WCJ) denied workers' compensation benefits, finding that the sole cause of the accident was Worker's illegal use of methamphetamine and amphetamine. The issues presented in this appeal are (1) whether the Legislature intended to exclude methamphetamine and amphetamine from the prohibited drugs set forth in NMSA 1978, Section 52-1-12 (1989) and NMSA 1978, Section 52-1-12.1 (2001) of the Workers' Compensation Act (WCA), following the Legislature's 1972 amendment to the New Mexico Drug and Cosmetic Act (DCA), NMSA 1953, Section 54-6-27(F)(2) (1967, as amended through 1971),[1] which removed the definition of "depressant, stimulant or hallucinogenic" drugs; and (2) whether there was substantial evidence to support the WCJ's determination that Worker's death was "occasioned solely by" his use of the illegal drugs methamphetamine and amphetamine, pursuant to Section 52-1-12. We conclude that the Legislature did not intend to exclude methamphetamine and amphetamine from the list of drugs prohibited by Section 52-1-12 and Section 52-1-12.1. We further conclude that there was insufficient evidence to support the finding of the WCJ that these drugs were the sole cause of Worker's death. Accordingly we remand this case to the WCJ for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

**{2}** On October 30, 2004, during the course of his employment, Worker was driving Employer's van northbound on Interstate 25 when he crossed lanes and made contact with the rear of another vehicle. As a result, Worker's van left the roadway, rolling over several times. Worker was pronounced dead at the scene.

**{3}** Employer did not have the required workers' compensation insurance at the time of Worker's death. Therefore, Theresa Ortiz (Worker's estate), the mother of Worker's two minor children, filed a claim for benefits with the Uninsured Employers' Fund (UEF), which the claims adjuster denied. Worker's estate then filed a Workers' Compensation Complaint with the Workers' Compensation Administration against Employer and the UEF (hereinafter collectively referred to as Employer).

**{4}** At the trial no live testimony was presented. *See* NMSA 1978, § 52-5-7 (1993) (governing procedures for filing claims disputes under the WCA). The parties stipulated that the "live testimony of parties and witnesses at [the] formal trial [was] not necessary, rather the formal trial [will] consist solely of evidentiary closing arguments." They also submitted deposition testimony and stipulated to the admission of their respective exhibits. The following facts were stipulated to in the Amended Pre-Trial Order:

---

[1] The DCA was later renamed the New Mexico Drug, Device and Cosmetic Act (DDCA), and recompiled as NMSA 1978, Sections 26-1-1 to -26 (1967, as amended through 2009).

2

c.      Prior to Worker's death, he had dual employment with TLC and [Employer]. . . .

d.      With regard to Worker's regular job with TLC Paving, he averaged 40 hours per week, Monday thru Friday. He would normally go to bed each night between 10:00 p.m. and 11:00 p.m., and arise each morning between 5:00 a.m. and 5:30 a.m. to get ready for work.

e.      [The day before the accident], Worker returned home from work with TLC around 5:00 p.m., ate dinner, played with his children for about 1/2 hour and then slept around one and one-half hours before arising to go to and report for work with [Employer].

. . . .

(1)  Worker's representative contends that Worker reported to work with [Employer] at 10:00 p.m., while Employer contends that Worker's shift began at 12 midnight.

The exhibits also indicated that Worker then drove Employer's delivery van all night until the accident, which occurred at 7:00 a.m. the next morning.

**{5}**    The police report of the investigation of Worker's accident was one of the exhibits admitted into evidence by the stipulation. Included in the report were statements made by the driver (Witness) of the vehicle struck by Worker. Witness indicated that he was heading northbound on Interstate 25 and noticed Worker's van behind him slowly cross over from the left lane into the right lane. Worker's van made contact with the rear of Witness's vehicle and rolled over several times as it left the roadway.

**{6}**    The investigating officer concluded that "[b]y the tire marks left on the roadway it appears that [Worker] made no attempt to brake prior to coming into contact with [the other vehicle]." The time of day, Witness's description of the van's movement, and the lack of braking led the investigating officer to "believe that [Worker] was unaware of the pending collision," and that he was "either asleep or unable to avoid making contact with [Witness's] vehicle or he was otherwise preoccupied."

**{7}**    The Autopsy Report from the Office of the Medical Investigator concluded that the cause of death was multiple blunt force injuries. The toxicology report revealed that Worker's femoral blood contained 0.08 mg/l of amphetamine, 0.78 mg/l of methamphetamine, and 0.03 mg/l of morphine.

**{8}**    Following a trial, the WCJ denied benefits to Worker's estate "because the sole cause of Worker's accident resulting in death was illegal drug use, pursuant to Section 52-1-12 NMSA." Worker's estate appealed to the Court of Appeals, arguing that the evidence was

3

insufficient to establish that Worker's use of illegal drugs was the sole cause of the accident, in light of evidence of fatigue. Thus, Worker's estate claimed that it was entitled to recover workers' compensation benefits reduced by 10 percent, according to Section 52-1-12.1, since the drugs were only a contributing cause of the accident.

{9}     Section 52-1-12 provides that a worker is precluded from recovering benefits if her or she is injured while under the influence of "a depressant, stimulant or hallucinogenic drug as defined in the New Mexico Drug, Device and Cosmetic Act." Because the definition for "depressant, stimulant or hallucinogenic" drugs had been removed in 1972 from the DCA, the Court of Appeals, sua sponte, directed the parties to submit supplemental briefs addressing whether the use of methamphetamine and amphetamine bars recovery of benefits pursuant to Section 52-1-12. *Ortiz ex rel. Baros v. Overland Express*, 2009-NMCA-041, ¶ 7, 146 N.M. 170, 207 P.3d 1147. In a divided opinion, the Court held that, based upon the plain language and amendatory history of Section 52-1-12, the DCA, and its successor the DDCA, the Legislature did not intend to include the use of methamphetamine and amphetamine as prohibited drugs under either Section 52-1-12 or Section 52-1-12.1. *Ortiz*, 2009-NMCA-041, ¶¶ 14-15. The Court therefore held that Sections 52-1-12 and 52-1-12.1 were inapplicable to the present case and Worker's estate was entitled to recover full workers' compensation benefits. *Ortiz*, 2009-NMCA-041, ¶ 17. The Court did not reach the issue of whether Worker's drug use was the sole cause of the accident.

{10}     In his dissent, Judge Wechsler concluded that the Legislature plainly intended to include "depressant, stimulant or hallucinogenic drug[s]" within the list of prohibited drugs enumerated in Sections 52-1-12 and 52-1-12.1. *Ortiz*, 2009-NMCA-041, ¶ 30 (Wechsler, J., dissenting). "However, the Legislature's removal of the definition of 'depressant, stimulant or hallucinogenic drug' from the predecessor to the DDCA . . . presented an apparent conflict between the statutory wording and the overall legislative intent." *Id.* (internal quotation marks omitted). In such cases, it is the Judiciary's "'responsibility to search for and effectuate . . . legislative intent.'" *Id.* ¶ 28 (Wechsler, J., dissenting) (quoting *State ex. rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1358 (1994)). Therefore, Judge Wechsler concluded that

> although the Legislature removed the definition of "depressant, stimulant or hallucinogenic drug" from the predecessor to the DDCA, the DDCA's reference to the Schedules of the Controlled Substances Act, which include a definition of the stimulants methamphetamine and amphetamine, is nevertheless sufficient for those drugs to be included in the DDCA and, by way of that link, in Section 52-1-12.

*Id.* ¶ 34 (Wechsler, J., dissenting). With respect to the sufficiency of the evidence, Judge Wechsler believed that substantial evidence supported the WCJ's determination that Worker's use of illegal drugs was the sole cause of the accident. *Id.* ¶ 27 (Wechsler, J., dissenting).

**{11}**  We granted Employer's petition for writ of certiorari pursuant to NMSA 1978, Section 34-5-14(B)(4) (1972) and Rule 12-502 NMRA, which presents the following questions for our review:  (1) whether the Court of Appeals "erred in holding that the Legislature did not intend to include the drugs methamphetamine and amphetamine as . . . prohibited drug[s] in the definitions of a 'depressant, stimulant or hallucinogenic' [drug] in Sections 52-1-12 and 52-1-12.1"; and (2) whether "there is substantial evidence to support the [WCJ's] determination that Worker's . . . death was due solely to his use of the illegal drugs methamphetamine and amphetamine contrary to Section 52-1-12" of the WCA. *Ortiz v. Overland Express*, 2009-NMCERT-004, 146 N.M. 642, 213 P.3d 792. *See* § 34-5-14(B)(4) (providing that this Court's appellate jurisdiction extends to cases involving "an issue of substantial public interest"); Rule 12-502 (governing petitions for the issuance of writs of certiorari seeking review of decisions of the Court of Appeals).

## II.  DISCUSSION

### A.  Whether the Exclusion of Methamphetamine and Amphetamine Contravenes the Purpose, Object, and Intent of the Legislature

**{12}**  Under Section 52-1-12, a worker is prohibited from obtaining workers' compensation benefits when injured if he is under the influence of certain drugs:

> No compensation is payable from any employer under the provisions of the Workers' Compensation Act [Chapter 52, Article 1 NMSA 1978] if the injury to the person claiming compensation was occasioned solely by the person being under the influence of *a depressant, stimulant or hallucinogenic drug as defined in the New Mexico Drug, Device and Cosmetic Act* [Chapter 26, Article 1 NMSA 1978] or under the influence of a narcotic drug as defined in the Controlled Substances Act [30-31-1 NMSA 1978] . . . .

(Emphasis added.)

**{13}**  Section 52-1-12 refers us to two other statutes to determine whether a drug falls under its provisions:  (1) the DDCA, to determine if the drug is "a depressant, stimulant or hallucinogenic"; and (2) the Controlled Substances Act, to determine if the drug is a "narcotic."

**{14}**  The 1971 amendment to the DDCA defined a depressant, stimulant, or hallucinogenic as

> any drug which contains any quantity of amphetamine or any of its optical isomers; any salt of amphetamine or any salt of an optical isomer of amphetamine; or any substance which the federal act has found to be, and by regulation, designated as habit-forming because of its stimulant effect on the central nervous system.

5

1971 N.M. Laws, ch. 245, § 2.  In 1972, however, this definition for depressant, stimulant, or hallucinogenic drug was removed.  1972 N.M. Laws, ch. 84, § 43.

**{15}**    Concurrent with the removal of the definition from the DDCA, the Legislature enacted the New Mexico Controlled Substances Act (CSA), 1972 N.M. Laws, ch. 84, § 1.[2] The CSA included the definition of controlled substances as "any drug, substance or immediate precursor enumerated in Schedules I through V of the Controlled Substances Act," and organized the drugs according to their depressant, stimulant, and hallucinogenic effects within Schedules I, II, and III.  *Id.* §§ 6-8, 43.  Notably, Schedule II identified drugs "associated with a stimulant effect on the central nervous system" and included any substance containing any quantity of methamphetamine or amphetamine.  *Id.* § 7.

**{16}**    Employer claims on appeal that when the Legislature classified drugs in the  CSA, according to their "depressant, stimulant and hallucinogenic" effects, the Legislature intended to retain and incorporate by reference the stimulants methamphetamine and amphetamine in the DDCA.  Employer argues that the Court of Appeals' conclusion to the contrary conflicts with case law, legislative intent, and the public interest.

**{17}**    The majority of the Court in *Ortiz* concluded that to read methamphetamine and amphetamine into Sections 52-1-12 and 52-1-12.1 would require them to engage in "impermissibly broad construction" and thus limited their analysis to the plain meaning of the statute. 2009-NMCA-041, ¶ 15.  Since the DDCA currently does not define "depressant, stimulant or hallucinogenic drugs," the Court of Appeals concluded that it could not "presume that after 1972, the Legislature intended to include methamphetamine and amphetamine in the definition of 'depressant, stimulant, and hallucinogenic drug' in Section 52-1-12 and Section 52-1-12.1."  *Id.* ¶ 14.  Judge Wechsler dissented from the majority, opining that the plain meaning of the statute was "muddled" and concluded that in such cases "'it is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute.'"  *Id.* ¶ 28 (Wechsler, J., dissenting) (quoting *Gallegos*, 117 N.M. at 353, 871 P.2d at 1359).  Judge Wechsler reasoned that "the reference to the definitional language of the DDCA is ancillary" and that the Court should look to the definition of stimulant drug in Section 30-31-7(A)(3), which includes methamphetamine and amphetamine, in order to effectuate the Legislature's intention that recovery under the WCA should be barred when the use of such drugs causes an accident. *Ortiz*, 2009-NMCA-041, ¶¶ 31, 33 (Wechsler, J., dissenting).

**{18}**    Because Section 51-1-12 refers to a statutory definition that does not exist in the DDCA, there is "'an apparent conflict between the statutory wording and the overall legislative intent.'"  *Ortiz*, 2009-NMCA-041, ¶ 30 (Wechsler, J., dissenting) (quoting *Gallegos*, 117 N.M. at 353, 871 P.2d at 1359).  When a statute's language is ambiguous or

---

[2] The CSA was recompiled as NMSA 1978, Sections 30-31-1 to -41 (1972, as amended through 2009).

6

unclear, we look to legislative intent to inform our interpretation of the statute. *See Perea v. Baca*, 94 N.M. 624, 627, 614 P.2d 541, 544 (1980) ("If there is any doubt as to the meaning of the words, we are permitted to interpret by looking to legislative intent . . . ."); *Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 23, ___ N.M. ___, 226 P.3d 622 (No. 31,279, Dec. 2, 2009) (holding that if giving effect to the language of a statute is absurd or unreasonable, then we interpret it according to its obvious spirit or reason).

> As nearly as we can, we must put ourselves in the place of those who uttered the words, and try to divine how they would have dealt with the unforeseen situation; and, although their words are by far the most decisive evidence of what they would have done, they are by no means final.

*Gallegos*, 117 N.M. at 354, 871 P.2d at 1360 (citation omitted). To the extent that this question implicates statutory interpretation, we review issues concerning legislative intent de novo. *State v. Fleming*, 2006-NMCA-149, ¶ 9, 140 N.M. 797, 149 P.3d 113.

**{19}** When interpreting statutes, we seek to give effect to legislative intent by looking to the "language used and consider[ing] the statute's history and background." *Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768-69, 918 P.2d 350, 354-55 (1996). In this case, the statutory history provides us with guidance as to the legislative intent. When the Legislature deleted the definition of depressant, stimulant, or hallucinogenic drug from the DDCA in 1972, they did not remove the reference to "depressant, stimulant or hallucinogenic drug[s]" in Section 52-1-12. When Section 52-1-12 was modified in 1989, the reference remained. In 2001, the Legislature amended the WCA by adding Section 52-1-12.1, entitled "Reduction in compensation when alcohol or drugs contribute to injury or death." Section 52-1-12.1 refers to the same statute as Section 52-1-12: "depressant, stimulant or hallucinogenic drug as defined in the New Mexico Drug, Device and Cosmetic Act [Chapter 26, Article 1 NMSA 1978] or under the influence of a narcotic drug as defined in the Controlled Substances Act [30-31-1 NMSA 1978]." The Legislature's continued reference to depressant, stimulant, or hallucinogenic drugs in these two sections demonstrates their intent to include these drugs within the class of drugs that limit or bar recovery of workers' compensation benefits. *See State v. Gonzales*, 78 N.M. 218, 219, 430 P.2d 376, 377 (1967) ("We have held that it is proper for this court to consider prior and subsequent statutes in pari materia to determine legislative intent.").

**{20}** In addition, the Legislature's substitution of "controlled substance," which refers us to the CSA, for "depressant, stimulant or hallucinogenic drug" in 1972, demonstrates its intention that we should look to the CSA to determine which drugs limit or bar recovery of workers' compensation benefits. *See State v. Maestas*, 2007-NMSC-001, ¶ 21, 140 N.M. 836, 149 P.3d 933 (filed 2006) (holding that when the Legislature enacts a statute, it is presumed that the Legislature is aware of existing statutes); *see also Las Cruces v. Rogers*, 2009-NMSC-042, ¶ 12, 146 N.M. 790, 215 P.3d 728 ("Statutes concerning the same subject matter must be read in connection with each other." (citing *State v. Marquez*, 2008-NMSC-055, ¶ 7, 145 N.M. 1, 193 P.3d 548)). Within the Schedules of the CSA, drugs

are classified according to their effect on the central nervous system. Drugs with depressant, stimulant, or hallucinogenic effects are listed in Sections 30-31-8(B), 30-31-7(A)(3), and 30-31-6(C), respectively. Section 30-31-7(A)(3), which lists drugs that have a "stimulant effect on the central nervous system," identifies both methamphetamine and amphetamine. By identifying methamphetamine and amphetamine as stimulant drugs in the CSA, we can infer that the Legislature intended them to be included as "depressant, stimulant or hallucinogenic drug[s]" prohibited by Section 52-1-12.

**{21}** Worker's estate maintains, however, that it is the role of the Legislature, not the Judiciary, to correct the reference to the non-existent definition of depressant, stimulant, and hallucinogenic drugs. Yet, as noted above, this Court has consistently recognized that it is appropriate for the Judiciary to look beyond the plain meaning of the statute's language to effectuate legislative intent when the statute is ambiguous. For instance, in *Gallegos*, the Court expressed that it is "the high duty and responsibility of the judicial branch of government to facilitate and promote the legislature's accomplishment of its purpose—especially when such action involves correcting an apparent legislative mistake." 117 N.M. at 353, 871 P.2d at 1360. We agree with Judge Wechsler in *Ortiz* that "the Legislature committed oversight when it removed the specific definitions referred to in Section 52-1-12." 2009-NMCA-041, ¶ 32 (Wechsler, J., dissenting). Therefore, pursuant to our duty to effectuate legislative intent, we correct this apparent oversight.

## B. Whether There Was Substantial Evidence to Find That Worker's Use of Methamphetamine and Amphetamine Was the Sole Cause of Worker's Accident

**{22}** Worker's use of methamphetamine and amphetamine before the accident either bars recovery of benefits pursuant to Section 52-1-12 or reduces it by 10 percent pursuant to Section 52-1-12.1. In order to determine if Worker's estate's recovery should be barred or simply reduced, we address the issue of whether Worker's use of methamphetamine and amphetamine was the sole cause of Worker's death. Worker's estate contends that there was not substantial evidence to support the WCJ's conclusion that Worker's use of methamphetamine was the sole cause of the accident, in light of evidence of Worker's fatigue. Employer argues that the WCJ reasonably could have found that Worker's fatigue was caused by his illegal consumption of drugs, rather than his lack of sleep.

**{23}** The WCJ's Compensation Order contained the following Findings of Fact on the issue of causation:

17. The accident of October 30, 2004, was *occasioned solely by* Worker's use of methamphetamine and amphetamine without prescription of a physician. . . .

8

18. At the time of accident, Worker was under the influence of amphetamine and methamphetamine. That drug is a narcotic drug. The use of that drug was the *exclusive proximate cause* of the accident of October 30, 2004.

(Emphasis added.) The WCJ also made the following conclusion of law regarding causation: "7. Claimant for Worker is not entitled to any benefits. This is because the sole cause of Worker's accident resulting in death was illegal drug use, pursuant to Section 52-1-12 NMSA."

**{24}** "[T]he issue of causation is a factual question to be determined by the fact finder," in this case, the WCJ. *Wilson v. Yellow Freight Sys.*, 114 N.M. 407, 410, 839 P.2d 151, 154 (Ct. App. 1992). "We review factual findings of [the WCJ] under a whole record standard of review." *DeWitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341. A whole record standard of review mandates that "this Court reviews both favorable and unfavorable evidence to determine whether there is evidence that a reasonable mind could accept as adequate to support the conclusions reached by the fact finder." *Wagner v. AGW Consultants*, 2005-NMSC-016, ¶ 79, 137 N.M. 734, 114 P.3d 1050. This Court has stated that "[t]he purpose of findings of fact is to set out the ultimate facts of the case, and they must be read together and the conclusions of law flow therefrom." *Hay v. N.M. State Highway Dep't*, 66 N.M. 145, 148, 343 P.2d 845, 847 (1959). To determine whether a challenged finding is supported by substantial evidence, "the reviewing court views the evidence in the light most favorable to the agency decision, but may not view favorable evidence with total disregard to contravening evidence." *Grine v. Peabody Natural Res.*, 2006-NMSC-031, ¶ 28, 140 N.M. 30, 139 P.3d 190 (internal quotations marks and citation omitted). To warrant reversal, this Court must be persuaded that it "cannot conscientiously say that the evidence supporting the decision is substantial, when viewed in the light that the [whole] record . . . furnishes." *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 129, 767 P.2d 363, 368 (Ct. App. 1988) (internal quotation marks and citation omitted).

**{25}** The evidence supporting the decision is not sufficient to establish that Worker's drug use was the sole cause of the accident. Based on the levels of drugs in Worker's blood, neither of the expert witnesses could state with any certainty that Worker's drug use was the sole cause of the accident. Worker's estate's expert witness, Dr. Eugenia Brazwell, stated that neither she nor anyone else could testify with a reasonable degree of toxicologic probability that the accident was "occasioned solely" by the drugs consumed by Worker at the time of the accident. Explaining her inability to draw this conclusion, Dr. Brazwell stated that "it's difficult to tell just by a level [of drugs in the blood] exactly what state [Worker] was in." She further stated that it is possible than an individual "with this amount of drugs in [his] system could function and not have an accident." Employer submitted the report of Dr. Don Fisher, an expert of toxicology and occupational diseases. Dr. Fisher similarly concluded that, though the blood levels were high enough to be a contributing cause, it would be "difficult to be absolutely sure . . . whether the accident was 'occasioned solely' by the level of drugs," even leaving room for doubt.

9

**{26}** There was substantial evidence presented to establish that fatigue was a contributing factor of the accident. In the Amended Pre-Trial Order, the parties stipulated that on the day before the accident Worker worked a full day at his other job with TLC Paving and only slept for approximately one and one-half hours before going to work for Employer. He then drove all night, and the accident occurred early the next morning at 7:00 a.m. In his police report, the investigating officer indicated that, considering the evidence that Worker made no attempt to brake, the time of morning, and Witness's description of Worker slowly drifting into his lane, Worker "was either asleep or unable to avoid making contact" with the other vehicle.

**{27}** Worker's estate's expert witness concluded that fatigue was likely a contributing cause of the accident. In her report, Dr. Brazwell concluded that the circumstances of the accident were consistent with Worker having fallen asleep at the wheel. She also testified that "[l]ooking at the accident scenario and the fact that [Worker] did not apply braking [it] seemed like he was probably more in a somnolent state, that he was more sleepy or lethargic." She further stated that she would not be comfortable being on the road with an individual who was sober, but who had as little sleep as Worker.

**{28}** The WCJ's findings of fact in support of his determination that Worker's drug use was the sole cause of the accident are actually conclusions of law. In his findings of fact, the WCJ concluded that the accident was *"occasioned solely by"* Worker's use of methamphetamine and that Worker's drug use was the *"exclusive proximate cause"* of the accident. (Emphasis added.) When conclusions of law are listed as facts, we do not afford them any deference in our review. *Chapman v. Varela*, 2009-NMSC-041, ¶ 5, 146 N.M. 680, 213 P.3d 1109. There were no other factual findings in the Order to support the WCJ's conclusion that Worker's drug use was the sole cause of the accident. Moreover, the WCJ failed to address the overwhelming evidence of Worker's fatigue, specifically Worker's lack of sleep and the length of time Worker had been driving before the accident occurred, raised in Worker's estate's Requested Findings of Fact and Conclusions of Law. We also express concern that the WCJ incorrectly found that methamphetamine was a narcotic drug. The CSA identifies methamphetamine as a stimulant drug, which unlike narcotic drugs, has the usual effect of counteracting fatigue. The WCJ's improper classification of methamphetamine illustrates that the WCJ may have misunderstood the drug's effect on Worker.

**{29}** Relying on Dr. Brazwell's testimony that methamphetamine causes fatigue when taken over a period of days, Employer argues that Worker's drug use was the cause of his fatigue. Dr. Brazwell explained that while the initial physical effect of methamphetamine is as a stimulant that counteracts fatigue and sleepiness, when a large amount of methamphetamine is taken over a period of days, the result is the opposite, causing extreme sleepiness. She indicated that if Worker had a history of drug use then that history could be construed as evidence that he was substance dependent and had been using drugs for a period of days. Thus, in order to bolster its theory that Worker was an abuser of methamphetamine who had been on a binge for a period of days when the accident occurred, Employer

10

presented Worker's criminal record that showed prior use of illegal drugs. However, the criminal record produced by Employer is of little probative value, since we cannot glean from the record whether methamphetamine was involved in the crime or whether the violation was for distribution or possession. In addition, the violation occurred in 1988, sixteen years before Worker's accident.

**{30}** Employer did not present any further evidence indicating that Worker had used methamphetamine in the days leading up to the accident. Since Employer raised Worker's drug use as an affirmative defense, which would bar recovery by Worker's estate pursuant to Section 52-1-12, Employer had the burden of proving that Worker's accident was "occasioned solely by" his drug use. *See Estate of Mitchum v. Triple S Trucking*, 113 N.M. 85, 91, 823 P.2d 327, 333 (Ct. App. 1991) (recognizing Section 52-1-12 as an affirmative defense); *see also J. A. Silversmith, Inc. v. Marchiondo*, 75 N.M. 290, 294, 404 P.2d 122, 124 (1965) (stating that it is well settled that the party alleging an affirmative defense has the burden of proof). Employer failed to meet its evidentiary burden. In the absence of evidence that Worker was a "binge" or habitual user of methamphetamine, who had been using methamphetamine in the days leading up to the accident, the record is insufficient to support a conclusion that Worker's drug use caused his fatigue. There was therefore insufficient evidence that Worker's use of drugs was the sole cause of the accident to the exclusion of other contributing causes, such as Worker's fatigue.

## III. CONCLUSION

**{31}** We conclude that the Legislature intended to include methamphetamine and amphetamine as stimulant drugs under Sections 52-1-12 and 52-1-12.1. Based on our review of the whole record, we further conclude that there was insufficient evidence to support the WCJ's conclusion that these drugs were the sole cause of Worker's accident, and thus the workers' compensation benefits should be reduced by 10 percent pursuant to Section 52-1-12.1. Accordingly, we reverse the Court of Appeals' holding that Worker's estate is entitled to full workers' compensation benefits under the WCA. This matter is remanded to the WCJ for further proceedings consistent with this Opinion.

**{32}    IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**


**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**


_____

11

**PATRICIO M. SERNA, Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _Ortiz v. Overland Express_, No. 31,612**

**AE**         **APPEAL AND ERROR**
AE-SS     Sua Sponte Issue on Appeal
AE-SB     Substantial or Sufficient Evidence

**WC**         **WORKERS' COMPENSATION**
WC-RG    Workers' Compensation Regulations
WC-WG   Workers' Compensation, General
WC-BG    Benefits, General
WC-CC    Causal Connection