This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37542**

**JESSIE BARRAZA-CERVANTES,**

    Worker-Appellant,

v.

**COMPLETE CONCRETE & EXCAVATING
and NEW MEXICO MUTUAL INSURANCE
COMPANY,**

    Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Reginald C. Woodard, Workers' Compensation Judge**

LeeAnn Ortiz
Albuquerque, NM

for Appellant

Law Office of Nathan Cobb LLC
Nathan A. Cobb
Nathan D. Pederson
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Jessie Barraza-Cervantes (Worker) appeals from a Workers' Compensation Judge's (WCJ) compensation order limiting his permanent partial disability (PPD) to scheduled injury benefits under NMSA 1978, Section 52-1-43 (2003). Worker raises two issues on appeal: (1) the WCJ erred in finding that Worker failed to establish a separate and distinct nonscheduled injury to his nervous system, which, if established, would have entitled him to greater PPD benefits under NMSA 1978, Section 52-1-42 (1990,

amended 2015); and (2) the WCJ erred by denying Worker's request to call the insurance adjuster as a witness at trial. We affirm.

**BACKGROUND**

**{2}**     Because this is a memorandum opinion and the parties are familiar with the facts of this case, we set forth only those facts that are necessary for our resolution of this appeal. Worker injured his left ankle in 2014 while working as a laborer for Complete Concrete & Excavating.[1] Several months later, Victoria Matt, MD, performed surgery on Worker's ankle. At a follow-up appointment in April 2015, Worker told Dr. Matt that he thought he might have complex regional pain syndrome (CRPS). Dr. Matt, however, did not diagnose Worker with CRPS; instead, she placed Worker at maximum medical improvement (MMI) for his injury and referred him to Christopher Patton, DO, for an impairment rating. Dr. Patton determined that Worker showed no signs of CRPS and gave an impairment rating based on the injury to Worker's left ankle and ongoing pain.

**{3}**     Worker filed a complaint with the Workers' Compensation Administration (WCA), seeking, in relevant part, PPD benefits based on a diagnosis of CRPS. The parties subsequently stipulated to Worker receiving an independent medical examination (IME). The two medical professionals who performed the IME, Kathy Head, JD, MD, and Irwin Isaacs, MD, did not diagnose Worker with CRPS. Instead, the IME panel diagnosed Worker with "left ankle sprain status post[-]surgical intervention and ongoing left ankle pain." Given Worker's ongoing pain, the panel determined that Worker had not reached MMI and, therefore, could not offer an impairment rating. The IME panel recommended that Worker see John Panek, DPM, for pain management and treatment options.

**{4}**     Worker subsequently changed his authorized health care provider to Miguel Pupiales, MD, who referred Worker to Dr. Panek. Dr. Panek and Dr. Pupiales treated Worker concurrently for a period of time. Dr. Pupiales initially diagnosed Worker with left ankle neuropathy; he did not diagnose Worker with CRPS, although he noted that Worker showed some signs of CRPS. Over the next several months, Worker received a series of steroid injections from Dr. Panek. On Worker's last visit with Dr. Panek, Dr. Panek noted he did "not see the typical symptoms related to CRPS." Worker continued to receive care from Dr. Pupiales, and approximately one month later, Dr. Pupiales diagnosed Worker with CRPS. Worker later reported that his pain was beginning to spread, and Dr. Pupiales referred Worker to Dr. Michael Malizzo for consideration of a spinal cord stimulator trial and a second diagnosis of CRPS. Worker never visited Dr. Malizzo, however, because Employer/Insurer's insurance adjuster, Ms. Andrea Kubler, did not approve the referral.

**{5}**     Employer/Insurer challenged Dr. Pupiales's diagnosis of CRPS, filing its own complaints with the WCA. The parties agreed to depose Dr. Pupiales and Dr. Panek and submit the depositions to the IME panel for a second IME. After reviewing the depositions of Dr. Pupiales and Dr. Panek and examining Worker themselves, Dr. Head

---

[1]New Mexico Mutual Insurance Company acted as Complete Concrete & Excavating's insurer, and we refer collectively to these entities as "Employer/Insurer."

and Dr. Isaacs concluded in their second IME report that Worker "does not have the diagnosis of [CRPS]." Instead, the IME panel diagnosed Worker with chronic left ankle pain, left ankle neuropathic pain, and left ankle nociceptive pain. The panel also placed Worker at MMI as of his final appointment with Dr. Panek.

{6}     The IME panel determined that it could rate Worker's impairment in one of two ways using the AMA Guides to the Evaluation of Permanent Impairment, Sixth Edition (Guides). First, by using Chapter 3 of the Guides pertaining to pain-related impairment, Worker could be assigned a one percent whole person impairment rating. Second, by using Chapter 16 of the Guides pertaining to the lower extremities, Worker could be assigned a five percent lower extremity impairment rating. The IME panel opined, based on its experience and training, that the latter method was "the most appropriate methodology to rate" Worker's impairment.

{7}     The parties—disputing, among other things, whether Worker suffered from a separate and distinct impairment to a nonscheduled body member—proceeded to trial in July 2018. Worker subpoenaed Ms. Kubler to testify at trial in an attempt to discover why she did not approve Dr. Pupiales's referral to Dr. Malizzo and Worker's additional request for a follow-up visit with Dr. Patton. Upon motion by Employer/Insurer, the WCJ quashed the subpoena. At trial, the WCJ reviewed the medical records and depositions of the treating and IME doctors and heard testimony from Worker. The WCJ found that Worker did not suffer from CRPS and that his nerve-related pain was not separate from his ankle injury. The WCJ thus limited Worker's PPD benefits to 115 weeks following MMI as an injury to a scheduled body member, i.e., Worker's left ankle, under Section 52-1-43(32). This appeal followed.

## DISCUSSION

{8}     Worker first argues that the WCJ erred in determining Worker did not suffer from a separate and distinct injury to his nervous system. On this basis, Worker contends he is entitled to PPD benefits for a nonscheduled injury under Section 52-1-42, not the scheduled injury benefits the WCJ awarded him under Section 52-1-43. In addition, Worker argues that the WCJ erred in refusing to allow him to call Ms. Kubler as a witness at trial.

## I.     Permanent Partial Disability Benefits

{9}     To be entitled to PPD benefits under Section 52-1-42, Worker had the burden of showing he "suffered a separate and distinct impairment to a nonscheduled body part." *Jurado v. Levi Strauss & Co.*, 1995-NMCA-129, ¶ 11, 120 N.M. 801, 907 P.2d 205. The WCJ found that Worker did not "suffer[] any job[-]related injuries . . . other than injury to his left ankle." Given the WCJ's determination that Worker's injury fell within Section 52-1-43(A)(32), the WCJ limited Worker's recovery to scheduled injury benefits. *See Torres v. Plastech Corp.*, 1997-NMSC-053, ¶ 23, 124 N.M. 197, 947 P.2d 154 ("A worker will receive scheduled injury benefits if he or she suffers from a physical impairment which creates neither a total disability nor a separate and distinct injury to a non-scheduled

member."); *see also Hise Constr. v. Candelaria*, 1982-NMSC-109, ¶ 11, 98 N.M. 759, 652 P.2d 1210 ("[T]he only partial disability benefits available are those in Section 52-1-43 if the injury is solely to a scheduled member."). Worker argues on appeal that the WCJ erred by not finding he also suffered either from CRPS or neuropathic pain, which, Worker contends, involves a separate and distinct injury to his sympathetic nervous system or peripheral nervous system, respectively. Because the nervous system is not a scheduled body member under Section 52-1-43, Worker asserts the WCJ should have awarded him PPD benefits for a longer period under Section 52-1-42. *See Jurado*, 1995-NMCA-129, ¶ 11 ("For [a w]orker to receive permanent partial disability benefits under Section 52-1-42, rather than scheduled injury benefits under Section 52-1-43, [the w]orker must show that (1) [he] is totally disabled or (2) [he] has suffered a separate and distinct impairment to a nonscheduled body part."). Employer/Insurer responds that substantial evidence supports the WCJ's finding that Worker's injury was limited to his left ankle and that Worker is inappropriately seeking to have this Court reweigh the evidence and substitute our judgment for that of the WCJ. We agree with Employer/Insurer.

**{10}** "We review workers' compensation orders using the whole record standard of review." *Leonard v. Payday Pro.*, 2007-NMCA-128, ¶ 10, 142 N.M. 605, 168 P.3d 177. Under this standard, we "canvass . . . all the evidence bearing on a finding or decision, favorable and unfavorable, in order to determine if there is substantial evidence to support the result." *Id.* (internal quotation marks and citation omitted). We review the evidence in the light most favorable to the WCJ's decision, but do not disregard contrary evidence. *Ortiz v. Overland Express*, 2010-NMSC-021, ¶ 24, 148 N.M. 405, 237 P.3d 707. "Substantial evidence is evidence that demonstrates the reasonableness of [the WCJ's] decision, and we neither reweigh the evidence nor replace the fact finder's conclusions with our own." *Lewis v. Am. Gen. Media*, 2015-NMCA-090, ¶ 17, 355 P.3d 850 (internal quotation marks and citation omitted). "Where the testimony is conflicting, the issue on appeal is not whether there is evidence to support a contrary result, but rather whether the evidence supports the findings of the trier of fact." *Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320 (internal quotation marks and citation omitted).

**{11}** In support of his contention that he established a separate and distinct injury to his nervous system, Worker relies principally on three pieces of evidence: (1) Dr. Pupiales's diagnosis of CRPS; (2) the IME panel's diagnosis of neuropathic pain; and (3) the IME panel's one percent whole person impairment rating. Reviewing each in turn, we hold the WCJ's finding that Worker's injury was limited to his left ankle is supported by substantial evidence.

## A.     The CRPS Diagnosis

**{12}** Worker admits that Dr. Pupiales was the only medical professional to diagnose Worker with CRPS. This does not matter, Worker contends, because "nothing in the Workers' Compensation Act requires more than one health care provider to confirm a diagnosis." True or not, the issue is not whether the record could have supported a

determination by the WCJ that Worker suffered from CRPS; instead, it is whether there is substantial evidence in the record supporting the WCJ's finding that Worker did not suffer from CRPS. *See id.* Such evidence is clear from the record; the IME panel specifically determined that Worker "does not have the diagnosis of [CRPS]." Where, as here, "a conflict arises in the proof, with one or more experts expressing an opinion one way, and others expressing a diametrically contrary opinion, the [WCJ] must resolve the disagreement and determine what the true facts are." *Molinar v. Larry Reetz Constr., Ltd.*, 2018-NMCA-011, ¶ 30, 409 P.3d 956 (internal quotation marks and citation omitted). And while the WCJ must have a rational basis for choosing one expert opinion over the other, *see id.*, both Dr. Head and Dr. Isaacs gave fully reasoned explanations in the second IME report and in their depositions why they ruled out CRPS as a diagnosis for Worker. Substantial evidence supports the WCJ's finding that Worker did not suffer from CRPS.

## B.    The Neuropathic Pain Diagnosis

**{13}**    Regarding the IME panel's diagnosis of neuropathic pain, Worker relies on portions of Dr. Head's and Dr. Isaacs' testimony to advance his argument that he suffered injury to his peripheral nervous system, a nonscheduled body member. Dr. Head testified that (1) Worker's neuropathic pain was caused by damage to "the tiny nerve fibers that were cut [during Worker's ankle surgery] and remain irritated" and (2) Worker's "peripheral nervous system . . . is not functioning normally, meaning the peripheral nerves as they're coming into the foot that were cut into when the skin was cut into." Similarly, Dr. Isaacs testified that part of Worker's peripheral nervous system was "causing the continued symptoms of constant burning and numbness." From this, Worker argues he "established a separate and distinct impairment for the neuropathic pain injury in addition to the ankle impairment."

**{14}**    Worker, however, largely ignores other portions of the IME doctors' testimony undermining his theory and supporting the WCJ's finding that he did not suffer a separate and distinct injury to his peripheral nervous system.[2] For instance, Dr. Head testified in her deposition that the only diagnosis she made pertained to Worker's left ankle. Although Dr. Head testified that some "fine peripheral nerves" around Worker's surgical site may have been damaged from the surgery, she affirmed that this damage was limited to Worker's left ankle and did not cause any dysfunction to other parts of Worker's nervous system. Dr. Head also testified that her use of the term "neuropathic pain" should not be interpreted as her making any diagnosis to a body part other than Worker's left ankle. Dr. Isaacs likewise testified that he did not diagnose Worker with any injury or impairment to any body part other than Worker's left ankle. Similar to Dr. Head, Dr. Isaacs testified that although "[t]iny nerves may have be[en] affected" around the surgical scar, he saw no "evidence of permanent injury to [Worker's] nervous

_____

[2]We remind counsel that Rule 12-318(A)(3) NMRA requires the appellant in his brief in chief to set forth *all* facts, favorable and unfavorable, bearing on a proposition so "that we are fully apprised of the fact-finder's view of the facts and its disposition of the issues[.]" *McDonald v. Zimmer Inc.*, 2020-NMCA-020, ¶ 32, 461 P.3d 930. Those appellants that fail to do so risk a determination by this Court that the lower tribunal's findings are binding on appeal. *See id.*

system[.]" By using the term "neuropathic pain," Dr. Isaacs simply meant to convey that Worker "was numb where he had his surgery."

**{15}** Considering the IME doctors' testimony about their limited use of the term "neuropathic pain" as it relates to Worker's injuries and their lack of intent to diagnose any injury or impairment beyond that to Worker's left ankle, substantial evidence supports the WCJ's rejection of a neuropathic pain injury separate and distinct from Worker's ankle injury. To the extent there are conflicts within Dr. Head's and Dr. Isaacs' deposition testimony, as Worker contends, resolving such conflicts is quintessentially a role of the WCJ, not this Court, and we will not second-guess the WCJ's rational choice. *See Motes v. Curry Cnty. Adult Det. Ctr.*, 2019-NMCA-022, ¶ 14, 458 P.3d 557 ("[W]e defer to the WCJ's resolution of conflicts in the evidence.").

## C.     The One Percent Whole Person Impairment Rating

**{16}** Worker posits that because "he has already been assigned a separate and distinct whole body impairment rating of [one percent] for the neuropathic pain injury," he is entitled to PPD benefits under Section 52-1-42 rather than scheduled injury benefits under Section 52-1-43. According to Worker, it is "undisputed" that the IME panel determined that Worker qualified for a one percent whole person impairment rating for neuropathic pain—a rating that is "separate and distinct from the lower extremity impairment rating of [five percent] for the original ankle injury." In other words, Worker contends that, because the IME panel determined his "neuropathic pain injury could be rated *separately* from the underlying ankle sprain . . . Worker is entitled to PPD benefits rather than scheduled injury benefits."

**{17}** Worker's argument, however, misrepresents the record. The IME panel in its second report offered "two ways to rate [Worker's] impairment[.]" It did not, as Worker contends, set forth two ratings for different impairments. As Dr. Head explained when being questioned by Worker's counsel, the one percent whole person impairment rating offered by the panel was *not* a rating for neuropathic pain separate from a rating for the ankle injury. Rather, the whole person impairment rating "was intended for the entirety of the diagnoses" and "include[d] the diagnosis of neuropathic pain, the nociceptive pain, and the chronic ankle sprain." But, as our Supreme Court has held, simply because "an injury to a scheduled member can be converted in some manner to a percentage disability as a whole" does not mean that a worker can avoid scheduled injury benefits. *Hise Constr.*, 1982-NMSC-109, ¶ 16. We thus reject Worker's argument that he is entitled to benefits under Section 52-1-42 on the ground the IME panel set forth an impairment rating for his neuropathic pain separate from an impairment rating for his underlying ankle injury.

**{18}** Worker making no other argument as to how he satisfied his burden of showing that he "suffered a separate and distinct impairment to a nonscheduled body part[,]" *Jurado*, 1995-NMCA-129, ¶ 11, and our review of the record showing ample support for the WCJ's finding that Worker's injury was limited to his left ankle, we hold this finding is supported by substantial evidence.

## II.    Exclusion of Witness at Trial

**{19}**    Worker additionally argues the WCJ erred in quashing his trial subpoena directed at Ms. Kubler, Employer/Insurer's insurance adjuster. We review the exclusion of evidence by the WCJ for an abuse of discretion. *See Lewis v. Albuquerque Pub. Schs.*, 2019-NMSC-022, ¶ 21, 453 P.3d 445. We may disturb the WCJ's ruling only if it is "clearly against the logic and effect of the facts and circumstances of the case" and can be characterized as "clearly untenable or not justified by reason." *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 36, 127 N.M. 47, 976 P.2d 999 (internal quotation marks and citations omitted).

**{20}**    Worker proposed to question Ms. Kubler about why she did not approve the referral to Dr. Malizzo regarding a diagnosis of CRPS and denied Worker's request for a return visit to Dr. Patton. In his order quashing the subpoena, the WCJ found, among other things, that Worker did not timely disclose his intent to call Ms. Kubler and Worker did not show how Ms. Kubler's testimony was relevant to any issue at trial. As for the relevancy ruling, the WCJ explained that Ms. Kubler's testimony would be relevant only to a claim of bad faith—a claim Worker did not assert. On appeal, Worker challenges both of the WCJ's bases for quashing the subpoena, and Employer/Insurer makes various arguments for affirmance, including that this issue is moot. Because we agree with the WCJ's relevancy ruling, we need not address the other matters raised by the parties.

**{21}**    Worker argues on appeal that Ms. Kubler's testimony was relevant because questioning could reveal an effort by Employer/Insurer to prevent Worker from receiving a second CRPS diagnosis or, alternatively, an impairment rating by Dr. Pupiales for a neuropathic pain injury. Worker asserts that "the actions or inactions of [Ms. Kubler] affected [his] ability to prove those injuries to some extent." But any testimony from Ms. Kubler regarding her motivations in denying Worker's requests would have no relevance to Worker's medical diagnosis. Simply put, even if Ms. Kubler testified that she acted with a "sinister motive" in refusing Worker's requests, as Worker suggests, such evidence would not have made it more or less probable that Worker *actually* suffered an injury to a nonscheduled body member. *Cf.* Rule 11-401 NMRA ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action."). Accordingly, we cannot say the WCJ abused his discretion in quashing the subpoena and excluding Ms. Kubler's testimony as irrelevant.[3]

---

[3]We do not address Worker's claim that Ms. Kubler's testimony would have been relevant in determining whether Worker was provided reasonable and necessary medical treatment. This argument was not advanced in Worker's brief in chief, nor has he indicated whether it was presented to the WCJ below. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 29, 127 N.M. 282, 980 P.2d 65 (noting that "the general rule is that we do not address issues raised for the first time in a reply brief"); *Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue.").

**CONCLUSION**

**{22}** For the foregoing reasons, we affirm.

**{23}  IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**